Alex Carl SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23305.

United States Court of Appeals
Fifth Circuit.

April 3, 1967.

Rehearing Denied May 4, 1967.

H. P. Burt, Albany, Ga., for appellant.

David L. Rose, Robert C. McDiarmid,
Attys., Dept. of Justice, John W. Douglas,
Asst. Atty. Gen., Floyd M. Buford, U. S.
Atty., Washington, D. C., for appellee.

Before BROWN, GOLDBERG and
AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge.

We have here another facet of the
Albany, Georgia, imbroglio. See Kelly v.

Page, 5 Cir., 1964, 335 F.2d 114; Rabinowitz v. United States, 5 Cir. 1966, 366 F.2d 34. Alex Carl Smith, the plaintiff, lives in Albany, and at the time relevant to this action owned a grocery store there. Smith alleges that the clientele of this store was about 98 per cent Negro.

In early April 1963, Smith was summoned to serve as a juror in the United States District Court for the Middle District of Georgia, Albany Division. Smith sat on the jury in the case of Ware v. Johnson, which, Smith alleges, was a "civil rights damage suit in which the plaintiff Ware was colored, and the defendant Johnson was the duly elected sheriff of Baker County, Georgia." The jury returned a verdict for the defendant Johnson on April 12.

Smith alleges that on about April 15, because of his participation in the jury verdict, certain "militant and activist" civil rights groups conspired to retaliate against him by picketing his grocery business with the aim of inducing a boycott of it.

On April 20, the picketing began. Smith alleges that in furtherance of the conspiracy, would-be customers were "physically carried" from his store. Sensing that the boycott was becoming effective, Smith requested the United States Attorney and the Federal Bureau of Investigation in Albany to investigate and prosecute the boycotters for intimidation of a federal juror.[1] Smith alleges that the FBI investigated only to the extent of determining that C. B. King, the attorney for Ware, was not part of the conspiracy. Upon this determination, the FBI refused to act further, despite repeated requests from Smith.

Smith alleges that the boycott resulting from the picketing completely destroyed his business. He filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346,[2] claiming that the government failed to arrest or prosecute the persons injuring his business. The government moved to dismiss for failure to state a claim, and this motion was granted. Smith appeals, and we affirm.

This case tests the meaning of vital sections of the Federal Tort Claims Act: 28 U.S.C.A. §§ 1346(b), 2674, and 2680(a).[3]

1. 18 U.S.C.A. § 1503 reads in part:
"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede * * * any grand or petit juror, or officer in or of any court of the United States * * * or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, * * * or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. "(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

3. "§ 2674. The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
"If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons re-

Smith argues here first that the government owes an affirmative duty to its citizens to investigate and prosecute crime, and that where, as here, there is a "clear violation" of a federal statute, the government may not rely on the discretionary function exception of § 2680(a) to avoid liability for failure to prosecute. Second, Smith argues that even if the failure to act complained of was discretionary, once an investigation is started by the government, the operation changes from the "planning" stage to the "operational" stage, and that discretionary functions on the "operational" stage are not within the exception of § 2680(a).

The government answers by arguing that the government's duty to prosecute crime does not run to the victim of the crime but to the nation as a whole, and that a victim's only remedy in tort is to sue the criminal. It argues further that the aspects of investigation and prosecution complained of here are discretionary functions within the exception of § 2680(a).

While we believe that the facts of the present case compellingly uphold the government's immunity from liability, we are also concerned lest we make some comment which would impede in other cases the full extension of the Act to its proper purpose, which includes waiving "the Government's traditional all-encompassing immunity from tort actions and * * * [establishing] novel and unprecedented governmental liability." Rayonier, Inc. v. United States, 1957, 352 U.S. 315, 319, 77 S.Ct. 374, 377, 1 L.Ed.2d 354, 358. We therefore have undertaken to set out the precise ground for our decision that the government activity complained of here was discretionary within the meaning of § 2680(a).

## I.

Each party recognizes, of course, that the major case interpreting the Act in this area is Dalehite v. U. S., 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427. In *Dalehite,* the United States was sought to be held liable for the catastrophic explosion in Texas City, Texas, of nitrate fertilizers manufactured by the government for shipment to Europe. The plaintiffs there could show no negligence by specific individuals in handling the material: therefore they claimed that the government was liable for having allowed manufacture and shipment of inherently dangerous fertilizers without either warning of the danger or demanding safe procedures for their handling. The Supreme Court rejected this claim, holding that any governmental misfeasance was protected because it was part of governmental discretion, and excepted from liability by § 2680(a):

"It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the

spectively, for whose benefit the action was brought, in lieu thereof."

"§ 2680. The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

superior, exercising, perhaps abusing, discretion." 346 U.S. at 35–36, 73 S. Ct. at 968, 97 L.Ed. at 1440–1441.

Smith contends that this holding has been rejected or so completely diluted by the holdings in Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 and *Rayonier*, supra, that it is no longer authoritative.

The government brushes off this suggestion with a quotation from Blaber v. United States, 2 Cir. 1964, 332 F.2d. 629, 631:

> "These cases [*Indian Towing* and *Rayonier*] did enlarge the scope of the United States' liability as it might have been thought to exist after *Dalehite*, but they did not affect the scope of the discretionary function immunity."

We cannot agree with this statement. The description of a discretionary function in *Dalehite* permits the interpretation that any federal official vested with decision-making power is thereby invested with sufficient discretion for the government to withstand suit when those decisions go awry. Most conscious acts of any person whether he works for the government or not, involve choice. Unless government officials (at no matter what echelon) make their choices by flipping coins, their acts involve discretion in making decisions.

 If the Tort Claims Act is to have the corpuscular vitality to cover anything more than automobile accidents in which government officials were driving, the federal courts must reject an absolutist interpretation of *Dalehite*, and that interpretation is rejected by *Indian Towing* and especially by *Rayonier*. In the latter case, the Court held that the government could be liable for substandard firefighting by the Forest Service. The facts of the case make it clear that the negligence lay in part in the decision to withdraw the major part of the firefighting force before the blaze was truly extinguished. This is perhaps a minor decision when compared to some made in the government, but it is a decision nonetheless, made by an official exercising some discretion.[4] Cases under the Act therefore put courts to the question of what sorts of decisions can be classified as resulting from discretion within the meaning of § 2680(a). It is not a sufficient defense for the government merely to point out that some decision-making power was exercised by the official whose act was questioned. Answering these questions, a difficult process, is not aided by importation of the planning stage-operational stage standard as argued for by Smith. Such a distinction is specious. It may be a makeweight in easy cases where of course it is not needed, but in difficult cases it proves to be another example of a distinction "so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation." Mr. Justice Frankfurter for the Court in *Indian Towing*, supra, 350 U.S. at 68, 76 S. Ct. at 126, 100 L.Ed. at 55. Such nonstatutory "aids" to construction tend to obscure, to limit, or even to replace the standards whose meaning they are supposed to clarify. Cf. Georgia Southern and Florida Railway Co. v. Atlantic Coast Line Railroad Co., 5 Cir. 1967, 373 F.2d 493; Frosty Morn Meats, Inc. v. NLRB, 5 Cir. 1961, 296 F.2d 617, 621. It must be remembered that the question at hand here is the nature and quality of the discretion involved in the acts complained of.

## II.

 The President of the United States is charged in Article 2, Section 3, of the Constitution with the duty to "take care that the laws be faithfully executed * * *" The Attorney General is the

---

4. Another such minor decision was made in United States v. Muniz, 1963, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805. There, plaintiff was a federal prisoner, attacked by 12 fellow prisoners. A prison guard, "apparently choosing to confine the altercation instead of interceding", locked the men into a prison dormitory where plaintiff was severely beaten. 374 U.S. at 152, 83 S.Ct. at 1852, 10 L.Ed.2d at 809. This was held to be negligent.

President's surrogate in the prosecution of all offenses against the United States. 5 U.S.C.A. § 291 et seq., 28 U.S.C.A. § 507. The discretion of the Attorney General in choosing whether to prosecute or not to prosecute, or to abandon a prosecution already started, is absolute. Confiscation Cases, 1869, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196, Powell v. Katzenbach, 1965, 123 U.S.App.D.C. 250, 359 F.2d 234, cert. den. 1966, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359, reh. den. 384 U.S. 967, 86 S.Ct. 1584, 16 L.Ed.2d 679. We held in United States v. Cox, 5 Cir. 1965, 342 F.2d 167, 171:

> "The discretionary power of the attorney for the United States in determining whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly apart from any question of probable cause. Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."

This discretion is required in all cases. The present case provides, however, a most compelling example of the soundness of the rule. "All must be aware now that there are times when the interests of the nation require that a prosecution be foregone." Concurring opinion of Judge Brown in United States v. Cox, supra, 342 F.2d at 182.

The national wellbeing has been in the balance during the recent struggle for racial equality, of which the present action is a piece. The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy. If the government could be held liable for prosecuting or failing to prosecute such a case, its choices in this area could quite conceivably be affected by such a suit. Thus, a policy decision of the federal government might be influenced by a plaintiff with no governmental responsibility.

We emphasize that this discretion, exercised in even the lowliest and least consequential cases, can affect the policies, duties, and success of a function placed under the control of the Attorney General by our Constitution and statutes. For example, in order to keep from congesting the courts and wasting the prosecutors' time with many ordinary cases, in some areas the government must choose to prosecute only impressive test cases with a high potential of success. Further, many defendants who commit federal crimes of a comparatively lowly order (such as transportation of stolen automobiles in interstate commerce, and narcotics and gambling violations) simultaneously commit similar state offenses. The decision to prosecute in federal court or to defer to state prosecution must therefore be made. Such decisions involve consideration of federalism and cooperation between the federal government and the states. These are fundamental questions. See Schwartz, Federal Criminal Jurisdiction and Prosecutors' Discretion, 13 Law and Contemp.Prob. 64, esp. at 83–87 (1947). Decisions which must be made in run of the mill cases reflect "[j]udgment reached primarily by balancing the public interest in effective law enforcement against the growing rights of the accused.

> "* * * [Some of the] considerations are the likelihood of conviction, turning on choice of a strong case to test uncertain law, the degree of criminality, the weight of the evidence, the credibility of witnesses, precedent, policy, the climate of public opinion, timing, and the relative gravity of the offense. In weighing these factors, the prosecutor must apply responsible standards, based, not on loose assumptions but, on solid evidence balanced in a scale demanding proof beyond a

reasonable doubt to overcome the presumption of innocence. * * * Still other factors are the relative importance of the offense compared with the competing demands of other cases on the time and resources of investigation, prosecution and trial. All of these and numerous other intangible and imponderable factors must be carefully weighed and considered by the conscientious United States Attorney in deciding whether or not to prosecute.

"All of these considerations point up the wisdom of vesting broad discretion in the United States Attorney." Pugach v. Klein, S.D.N.Y.1961, 193 F.Supp. 630, 635. United States v. Cox, supra, 342 F.2d at 182–196 (concurring opinions of Judges Brown and Wisdom); United States v. Brokaw, S.D.Ill.1945, 60 F.Supp. 100.

### III.

■ We therefore hold that § 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter whether these decisions are made during the investigation or prosecution of offenses. See United States v. Faneca, 5 Cir. 1964, 332 F.2d 872. Another holding could diffuse the government's control over policies committed to it by the Constitution, and irrationally concentrate political responsibility in fortuitous lawsuits.

Whatever else § 2680(a) may do, its discretionary function exception prevents this diffusion of governmental power into private hands. The United States is immune from liability in the present case not because of the mere fact that government officials made choices, but because the choices made affected the political (not merely the monetary) interests of the nation. The Act is intended to spread monetary losses in certain cases among the taxpayers; it is not intended to affect the distribution of political responsibility. Mr. Justice Jackson, dissenting in *Dalehite*, recognized this:

"When an official exerts governmental authority in a manner which legally binds one or many, he is acting in a way which no private person could. Such activities do and are designed to affect, often deleteriously, the affairs of individuals, but courts have long recognized the public policy that such official shall be controlled solely by the statutory or administrative mandate and not by the added threat of private damage suits. For example, the Attorney General will not be liable for false arrest in circumstances where a private person performing the same act would be liable, and such cases could be multiplied. The official's act might inflict just as great an injury and might be just as wrong as that of the private person, but the official is not answerable." 346 U.S. at 59, 60, 73 S.Ct. at 980, 97 L.Ed. at 1453.

The present case falls easily into the exception. It is easy to think of future cases which will be more difficult, but prosecutorial discretion has long been recognized as sacrosanct. It here withstands the questioning of complaining critics. The judgment of the Department of Justice is an important aspect of governmental policy, and it makes no difference here that the Department was allegedly negligent or wrongful.

The government differs from private persons, and its decisional options, exercisable in the interests of the nation as a whole, may limit the supplications of individual citizens. In these areas the government must be answerable only through constitutional machinery. Its actions in this sphere must not be affected by private suits in which each plaintiff would be a self-appointed ombudsman forcing the exercise of these options.

Affirmed.