**BUB DAVIS PACKING CO., INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. SA–76–CA–362.**

United States District Court, W. D. Texas, San Antonio Division.

Nov. 23, 1977.

J. P. Darrouzet, Austin, Tex., for plaintiff.

Jamie C. Boyd, U. S. Atty. by Harold O. Atkinson, Asst. U. S. Atty., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

### I. BACKGROUND

This action was brought by Plaintiff, Bub Davis Packing Co., Inc., against the United States under the Tort Claims Act. The Complaint alleged that the United States Department of Agriculture wrongfully closed down Plaintiff's meat packing plant and sought damages. The action arose out of a criminal investigation conducted jointly by the United States Department of Agriculture's Office of Investigation and its Animal Plant Health and Inspection Service (A.P.H.I.S.). The Government answered, denying that the activities of the Government employees were wrongful and asserting that all the events which transpired at Plaintiff's meat packing plant resulted from the valid exercise of the power of the Department of Agriculture to regulate the process by which meat is supplied to the public. In addition, the Government filed a Motion to Dismiss, urging that the "discretionary function" exception of the Tort Claims Act, 28 U.S.C. § 2680(a), was applicable to the facts of this cause. The Government also urged that it exercised "due care" as that term applies in Section 2680(a).

As to the merits, the Government urged that the conduct of its employees was neither wrongful nor negligent, and that such acts were not the proximate cause of Plain-

tiff's alleged injury, and that no damages were sustained by Plaintiff.

The Court received into evidence the depositions and statements of various witnesses and also heard live testimony. The Court postponed ruling on the Government's Motion to Dismiss and proceeded to hear the cause on the merits. Accordingly, the Court has carefully reviewed and considered all the evidence submitted by the parties in order to make an independent determination of the merits of this action, and to consider the jurisdictional issues raised. Consideration, first, is given to the tort liability aspects of this action.

## II. THE TORT CLAIM

On February 13, 1975, Floyd E. Cotton an Investigator of the Department of Agriculture's Office of Investigation, was acting in an undercover capacity at Plaintiff's meat packing plant. Because of prior reports received by the Department of Agriculture that adulterated meat, derived from dead, dying, or diseased cattle, was being processed at the Davis plant, agent Cotton was assigned to observe the plant's operation. During this time Cotton witnessed a dead, or lifeless, cow being taken into the plant for processing.

Later that day, an employee of Bub Davis Packing Company, Augustine A. Flores, who also served as an informant for the Government, identified another animal as having died other than by slaughter. Both animals were taken into the plant by employees of the packing company for processing and shipping to the public. Based on the observations of agent Cotton, the federal inspectors assigned to the plant by A.P.H.I.S. requested that plant operations be suspended pending a determination of what had happened to the adulterated beef. Subsequently, one carcass was seized and detained, and became the subject of *United States v. One Beef Carcass,* Cause No. SA–75–CA–56, which suit was dismissed by the Court, after settlement, on April 6, 1976.

On December 18, 1975, Plaintiff filed an administrative claim against the Department of Agriculture under the Tort Claims Act. By letter dated June 9, 1976, the Department of Agriculture denied said administrative claim. Following the denial of Plaintiff's claim by the Department of Agriculture, this suit was instituted.

The Court finds that the Department of Agriculture initiated an investigation regarding Plaintiff's activities to determine whether dead, "downed" or dying animals were being processed into food for human consumption in violation of the Meat Inspection Act, 21 U.S.C. § 601 *et seq.* and to investigate possible bribery by Plaintiff of a Department of Agriculture inspector assigned to Plaintiff's meat processing plant.

The testimony of Rene Campos, Officer-in-Charge, Southwest Area of A.P.H.I.S., the testimony of Dr. W. H. Irvin, Regional Director, Southwest Region of A.P.H.I.S. and of William D. Parker, Regional Director, Region V, of the Office of Investigation of the Department of Agriculture, together with the exhibits introduced by them, established clearly to the Court that an investigation of the activities of Plaintiff's meat packing plant was initiated and conducted only after officials from A.P.H.I.S. and the Office of Investigation had considered the nature and source of the charges and had determined that the allegations were of such a serious nature as to warrant an extensive investigation. Their testimony and that of other Government witnesses further indicates that the Government took certain precautions to be certain the allegations were true. These precautions included an extensive "round-the-clock" surveillance of Plaintiff's plant for more than a week, involving Government employees from both A.P.H.I.S. and the Office of Investigation, and included daily briefings of Augustine Flores. Flores had agreed to serve as an informant for the Government after he told the Government investigators of his observations of dead or "downed" cattle being processed by the plant without prior Government inspection.

The surveillance was undertaken from a residence near the plant where the activities in the pen area of the plant could be observed. In fact, the Government employ-

ees testified to observing several apparent violations of the Meat Inspection Act.[1] It appears to the Court that the Government certainly had a reasonable basis for initiating and conducting its investigation of Plaintiff's plant.

■ The foregoing demonstrates, and the Court finds, that the Government had a reasonable basis or probable cause to believe that violations of the Meat Inspection Act and the applicable regulations were occurring. A long line of cases, from *Stacey v. Emery,* 97 U.S. 642, 645, 24 L.Ed. 1035 (1878) to *United States v. Tuley,* 546 F.2d 1264, 1267 (5th Cir. 1977), state the classic definition of "probable cause." These cases say that probable cause exists if "the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been [or is being] committed . . . ." It appears to the Court that the Government has more than adequately met this standard.

■ The evidence further shows that following the Government's continuing surveillance and its interviews with informant Flores, A.P.H.I.S. and Office of Investigation officials decided to send agent Cotton to the plant in an undercover capacity so that he could more closely observe the activities of the plant. While Cotton was at the plant, he and Flores observed two cows which had died other than by slaughter being taken into the plant. Under the facts of this case, the Government had the requisite regulatory and statutory authority for the actions taken. For example, 21 U.S.C. § 604 provides in part as follows:

. . . and all carcasses and parts thereof thus inspected and condemned shall be destroyed for food purposes by the said establishment in the presence of an inspector, and the Secretary may remove inspectors from any such establishment which fails to so destroy any such condemned carcass or part thereof, . .

In addition, 9 C.F.R. 305.5(a) provides as follows:

The Administrator is authorized to withdraw inspection from an official establishment where the sanitary conditions are such that its products are rendered adulterated, or for failure of the operator to destroy condemned products as required by the Act and the regulations in this subchapter. Inspection may be withdrawn in accordance with Section 401 of the Act and the applicable rules of practice.

It appears to the Court that the introduction of a cow which is dead, "downed," or dying into a plant which processes animals for human consumption is a violation of the sanitary conditions of a meat packing plant. In addition, the failure to destroy condemned products is contemplated by 9 C.F.R. 305.5(a).

Furthermore, 21 U.S.C. § 677 provides that the Secretary of Agriculture, in person or by such agents as he may designate, may prosecute any inquiry necessary to his duties under Chapter 12 of Title 21 of the United States Code. It further provides he shall also have the powers conferred under Sections 46(a) and (b), 48, 49, and 50 of Title 15. Said Section 46(a) provides as follows:

The Commission shall also have power—

Investigation of persons, partnerships, or corporations

(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, . . . to regulate commerce, and its relation to other persons, partnerships, and corporations.

And, Section 49 provides the Secretary shall, at all reasonable times, have access to the documentary evidence of any corporation and the power to require by subpoena the attendance and testimony of witnesses.

---

1. A summary of the testimony of the Government employees concerning such violations is attached hereto as Appendix A.

Finally, a portion of 21 U.S.C. § 606 bears emphasis regarding the inspection powers of the Secretary of Agriculture:

> For the purposes hereinbefore set forth, the Secretary shall cause to be made, by inspectors appointed for that purpose, an examination and inspection of all meat food products prepared for commerce in any slaughtering, meat-canning, salting, packing, rendering, or similar establishment, and for the purposes of any examination and inspection said inspectors shall have access at all times, by day or night, whether the establishment be operated or not, to every part of said establishment;

. . . . .

■ The Court finds, after considering all the evidence, that the activities of the Government and its officials were neither wrongful nor negligent. In addition, the Court finds that Plaintiff did not prove the Government's acts were the proximate cause of Plaintiff's alleged damages. While there was testimony by Plaintiff relating to damages, the Court believes a finding as to damages is not necessary to the decision of the merits of this cause. Therefore, the Court enters judgment that Plaintiff take nothing.

## III. JURISDICTIONAL ISSUES

A. The "Due Care" Provision of 28 U.S.C. § 2680(a).

Plaintiff's claim is barred by the first portion of 28 U.S.C. § 2680(a) which provides that the Tort Claims Act shall not apply to:

> (a) Any claim based upon an act or omission of an employee of the Government, exercising *due care,* in the execution of a statute or regulation . . . .
> (Emphasis supplied.)

■ The evidence is clear that the Government and its employees exercised "due care" in carrying out the applicable statutes and regulations. The duty of "due care" is addressed to the proper implementation of the statutes and regulations. "Due care" is defined in *Hatahley v. United States,* 351 U.S. 173, 181, 76 S.Ct. 745, 752, 100 L.Ed. 1065 (1956). In *Hatahley,* the Supreme Court said:

> 'Due care' implies at least some minimal concern for the rights of others. Here, the agents proceeded with complete disregard for the property rights of the petitioners.

The evidence in the instant cause is clear that the Government and its employees acted with a much higher standard than that afforded by a "minimal concern for the rights of others," or "complete disregard for the property rights" of the Plaintiff.

The Court finds that the acts which the Plaintiff complains were wrongful and illegal were not taken solely on the basis of an informant's tip. To the contrary, when Plaintiff's employee, Augustine A. Flores, informed A.P.H.I.S. Compliance Officer Matias Ramos of possible violations of the Meat Inspection Act at Plaintiff's plant, the Government, acting through Department of Agriculture officials in A.P.H.I.S. and the Office of Investigation, made a series of policy decisions relating to enforcement of the Act which resulted in the initiation of an investigation to determine the truth or falsity of Flores' allegations.

Therefore, under the facts presented in the instant case, it appears to the Court that it does not have jurisdiction over the United States because the Government did exercise "due care" as contemplated by Section 2680(a).

B. The "Discretionary Function" Exception of 28 U.S.C. § 2680(a).

The next jurisdictional consideration is whether the "discretionary function" exception of 28 U.S.C. § 2680(a)[2] is applicable.

**2.** § 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or per-*

This Court has carefully reviewed the history of the discretionary function exception of the Tort Claims Act, particularly the decisions of the Fifth Circuit Court of Appeals. It appears that such a review must begin with *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), which originated within the Fifth Circuit. *Dalehite,* at pages 24–30, 73 S.Ct. 956, indicates that from the legislative history of the Tort Claims Act Section 2680(a) was intended to protect the Government against tort liability for errors in administration or in the exercise of a discretionary function. It further indicates (at 30–36, 73 S.Ct. 956) that the acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

However, subsequent decisions of the Supreme Court and this Circuit modified the general principles expressed by *Dalehite.* See, *Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Pigott v. United States,* 451 F.2d 574 (5th Cir. 1971); *Moyer v. Martin Marietta Corp.,* 481 F.2d 585 (5th Cir. 1973); and *J. H. Rutter Rex Manufacturing Co., Inc. v. United States,* 515 F.2d 97 (5th Cir. 1975).

It would appear, however, that the facts in the instant cause are analogous to those in *Smith v. United States,* 375 F.2d 243 (5th Cir. 1967), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). The *Smith* case was a tort suit against the United States brought by a proprietor of a business claiming that the Federal Bureau of Investigation failed to fully investigate and prosecute an alleged boycott of the proprietor's store. The proprietor had been a federal juror in a civil rights case, and had urged that the boycott destroyed his business. The Government invoked the discretionary function exception.

The opinion in *Smith* provides an excellent discussion of Section 2680(a), including

language from *Rayonier, supra,* and *Indian Towing Co., supra.* Some of the language limiting the application of Section 2680(a) is worth noting, particularly where the court states, at page 246,

[1] If the Tort Claims Act is to have the corpuscular vitality to cover anything more than automobile accidents in which government officials were driving, the federal courts must reject an absolutist interpretation of *Dalehite,* and that interpretation is rejected by *Indian Towing* and especially by *Rayonier.* . . .

The Circuit, in *Smith,* while declining to apply an absolutist interpretation to the facts of its case, nevertheless held that the decision whether to investigate or prosecute involved the type of discretion to which Section 2680(a) was applicable.

In the instant cause the Court believes that the *Smith* principles are applicable. The decision by the Department of Agriculture to investigate Plaintiff's meat packing plant is clearly the kind of "discretion" contemplated by Section 2680(a).

The evidence received at the trial established that the enforcement actions taken in this case were the result of decisions made on the regional and national levels of the Department of Agriculture. The Court believes that such decision-making was within the scope of Section 2680(a).

A decision from another district, that of *Portello and Co. v. Butz,* 345 F.Supp. 1204, 1207 (D.D.C.1972) is persuasive. In applying the discretionary function exception, the court, in *Portello* stated:

[1] The regulations vest considerable discretion in the official inspectors in their determinations as to the adulteration or misbranding of meat both in domestic establishments and at ports of entry. That discretion is consonant with the policy of the Act, as stated in 21 U.S.C. § 602 (1970). It is clear from that section that the policy of the Act and the regulations is above all to protect the health and welfare of consumers.

*form a discretionary function or duty on the part of a federal agency or an employee of the*

*Government, whether or not the discretion involved be abused.* (Emphasis supplied.)

The Court, therefore, finds that the discretionary function exception of the Tort Claims Act is applicable in this cause, and that the sovereign immunity of the United States has not been waived.

It is therefore ORDERED that Plaintiff's Complaint be dismissed, with prejudice.

### APPENDIX A

SUMMARY OF GOVERNMENT EMPLOYEES' TESTIMONY REGARDING THEIR SURVEILLANCE OF THE BUB DAVIS PACKING CO., INC.

(a) According to the testimony of Robert Howard and Charlie Rawle, on February 10, 1975, Howard observed two apparently lifeless cows being hoisted from the pens (not from a truck) toward the plant—an apparent violation of 21 U.S.C. §§ 603 and 605 as well as 9 C.F.R. 309.3(a), (b), 309.13(a), or 9 C.F.R. 309.2(b) and 390.15(a).

(b) On February 11, 1975, Howard observed an apparently lifeless cow being hoisted from the pens into the plant an apparent violation of 21 U.S.C. §§ 603 and 605 as well as 9 C.F.R. 309.3(a), (b), 309.-13(a), or 9 C.F.R. 309.2(b) and 390.15(a).

(c) On February 12, 1975, Howard observed two apparently lifeless cows being hoisted into the plant. An apparent violation of 21 U.S.C. §§ 603 and 605 as well as 9 C.F.R. 309.3(a), (b), 309.13(a), or 9 C.F.R. 309.2(b) and 390.15(a). Howard testified conclusively that these cows were dead in the pens and that they were taken into the plant by the same route used for the normal kill.

(d) On February 11, 1975, Ramos observed an apparently lifeless calf hoisted out of a truck and sent off on an overhead rail toward the plant an apparent violation of 21 U.S.C. §§ 603 and 605 as well as 9 C.F.R. 309.3(a), (b), 309.13(a), or 9 C.F.R. 309.2(b) and 309.15(a).

(e) Agent Cotton, on February 13, 1975, witnessed a lifeless black cow being taken from the chute area into the plant, processed through the edible food compartment of the plant along with other carcasses apparently intended for placement into commerce for purposes of human consumption. The carcass of this cow was subsequently located and identified by plant foreman Glover and by identifying stab wounds in the shoulders (testimony of Ramos and Cotton) on the afternoon of February 13, 1975. This carcass was in the cooler with the rest of the day's kill and did not bear the "condemned" stamp. This would involve violations of 21 U.S.C. §§ 603, 604, 605, and 606, and 9 C.F.R. 309.3(a) and (b), 309.13(a), 314.-3(a), 314.8(a) and (b).

(f) The Government's surveillance logs indicate that Cotton observed, on February 12, 1975, two downed cows (a grayish-brown cow with tag no. 228 and a hereford cow with tag no. 533) and a dead hereford cow, with no visible tag, in the pens.

The statement of informant Augustine A. Flores, dated February 12, 1975, indicates that on February 12, 1975, (1) Flores observed two red cows bearing tag numbers 533 and 695 which he believed to be dead, (2) Flores observed a grayish jersey cow bearing tag number 228 downed in the pens, (3) Flores observed three other downed hereford cows and one dead hereford cow, and (4) all of these animals were observed by Flores to be processed for human consumption—involving violations of 21 U.S.C. §§ 603, 604, 605 and 606, and 9 C.F.R. 309.2(b), 309.3(a) and (b), 309.13(a), 314.3(a), 314.8(a) and (b).

(g) A subsequent statement by Augustine A. Flores, of February 13, 1975, indicates that Flores, on February 13, 1975, observed two dead cows taken from the pen area into the plant and processed for human consumption. One of these cows was black and bore tag number 730, and is the same cow observed by Agent Cotton and the carcass of which was later detained. The other cow was a blackish-gray brahman cow bearing tag number 609. Flores further stated he did not "knock" or "stun" the animals since they were already dead. ("Knocking" or "stunning" of animals is a method of rendering such animals unconscious prior to their being processed.)

(h) The testimony of Howard and Rawle indicates they recovered two cow skulls from an offal truck containing the animals processed that day which did not have any evidence of having been knocked or stunned. All other skulls they examined did have such knocking marks or fractures.

(i) Government agents interviewed employees of Bub Davis Packing Co., Inc., on February 13, 1975, and February 14, 1975, regarding their knowledge of possible violations of the Meat Inspection Act at the plant. These statements, which were received in evidence, indicate that dead or dying animals were processed routinely at Plaintiff's plant, in violation of the Act.