Douglas Glynn PAYTON, etc., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 78–533–P.

United States District Court, S. D. Alabama, S. D.

March 29, 1979.

Edward L. Hardin, Jr., Birmingham, Ala., for plaintiffs.

William A. Kimbrough, U. S. Atty., Mobile, Ala., Barbara Allen Babcock, Asst. Atty. Gen., Jeffrey Axelrad, Emilia M. De-Meo, Dept. of Justice, Washington D. C., for defendant.

## ORDER ON MOTION TO DISMISS

PITTMAN, Chief Judge.

In 1977, Thomas Warren Whisenhant was convicted of the murder of Sheryl Lynn Payton, the plaintiffs' decedent.

This is a wrongful death action in which the plaintiffs allege the United States negligently reduced the sentence of Whisenhant and negligently granted him a parole. Plaintiffs assert that this court has jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680.

The defendant's motion to dismiss the complaint asserts three grounds: (1) the court lacks subject matter jurisdiction; (2) plaintiffs allege no actionable duty owed by defendant to plaintiffs; and (3) plaintiffs have failed to exhaust their administrative remedies with respect to Count VI of the complaint. Agreeing that it is without jurisdiction in this apparent case of first impression, this court does not reach the issues presented by grounds (2) and (3).

The United States may not be sued unless Congress has so provided. *Dalehite v. United States*, 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427, 1438 (1953); *Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 95 L.Ed. 152, 157 (1950). Congress has authorized a limited waiver of the United States' tort immunity by conferring jurisdiction upon the federal district courts with respect to

"claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable . . ." 28 U.S.C. § 1346(b).

Excluded from the broad grant of jurisdiction contained in § 1346(b) are claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The so-called "discretionary function" exception to federal tort liability of § 2680(a) was construed in *Dalehite v. United States, supra. Dalehite* was an attempt to recover damages for the death of plaintiffs' decedent caused by explosions of fertilizer at Texas City, Texas in 1947, in which many people were killed and much of Texas City destroyed. The plaintiffs claimed negligence on the part of the federal officials and employees involved in producing and

distributing the fertilizer "at the instance, according to the specifications [of] and under the control of the United States." 346 U.S. at 18, 73 S.Ct. at 959, 97 L.Ed. at 1432. The Supreme Court affirmed the Court of Appeals' reversal of the District Court's award of damages to the plaintiffs. The Court held, *id.* at 24, 73 S.Ct. at 962, 97 L.Ed. at 1434, that the District Court was without jurisdiction because, *id.* at 37, 73 S.Ct. at 969, 97 L.Ed. at 1441, "the cabinet-level decision to institute the fertilizer export program was a discretionary act . . . ."[1] within the meaning of § 2680(a). The Court did not define the limits of the discretion exempted from liability by § 2680(a). It did state "that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." *Id.* at 35–36, 73 S.Ct. at 968, 97 L.Ed. at 1440–1441. It stated that the " 'discretion' protected by the section is not that of the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law." *Id.* at 34, 73 S.Ct. at 967, 97 L.Ed. at 1440.

In *Smith v. United States*, 375 F.2d 243 (5th Cir. 1967), *cert. denied* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967), the plaintiff sought to recover for damages to his business caused by the failure of the United States Attorney to arrest and prosecute members of a civil rights group who allegedly had illegally conspired to boycott

the plaintiff's store after his service as a member of a federal jury which returned a verdict for the white defendant in a civil rights damage suit brought by a black plaintiff. In concluding that the United States was insulated from liability by § 2680(a) "for exercising the discretion inherent in the prosecutorial function of the Attorney General," 375 F.2d at 248, the court rejected the notion that its determination could be governed by hard and fast rules of decision. "It must be remembered that the question at hand here is the *nature* and *quality* of the discretion involved in the acts complained of." (emphasis added) *Id.* at 246.

The court then examined the "nature and quality" of the Attorney General's prosecutorial discretion. The court pointed to factors which, in its view, require that such discretion be absolute (and stated):

"In weighing these factors, the prosecutor must apply responsible standards, based, not on loose assumptions but, on solid evidence balanced in a scale demanding proof beyond a reasonable doubt to overcome the presumption of innocence. * * * [I]ntangible and imponderable factors must be carefully weighed and considered . . . . 'All of these considerations point up the wisdom of vesting broad discretion in the United States Attorney.' *Pugach v. Klein*, S.D.N.Y.1961, 193 F.Supp. 630, 635. *United States v. Cox*, supra, 342 F.2d [167] at 182–196 (concurring opinions of Judges Brown and Wisdom); *United States v. Brokaw*, S.D.Ill.1945, 60 F.Supp. 100."

*Id.* at 247–48.[2]

In *Radford v. United States*, 264 F.2d 709 (5th Cir. 1959), the complaint charged that officers or enlisted personnel of the United States Army entered into a conspiracy resulting in the plaintiff's loss of her position with the United States. The claim was

---

1. The Court noted that the effect of the Federal Tort Claims Act " 'is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities.' " 346 U.S. at 43, 73 S.Ct. at 972, 97 L.Ed. 1444, quoting *Feres v. United States*, cited in text, *supra*.

2. See also *United States v. Faneca*, 332 F.2d 872 (5th Cir. 1964) *cert. denied* 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965).

held barred by the "discretionary function" exception of § 2680(a). The court said that the Federal Tort Claims Act did not subject "the United States to a claim of the kind asserted here, that, as a result of a conspiracy to cause plaintiff's discharge, plaintiff was discharged by the officer or agent of the United States charged with the duty of determining whether a person in its employ should or should not be discharged." 264 F.2d at 710.[3]

In *J. H. Rutter Rex Mfg. Co., Inc. v. United States*, 515 F.2d 97 (5th Cir. 1975), the plaintiff employer sought damages under the Tort Claims Act for a claimed unreasonable delay of the National Labor Relations Board in securing compliance with a reinstatement order. The reason for the delay was the decision of the NLRB to assign the case to an inexperienced employee who was told to handle a smaller case first to gain experience. The NLRB office was understaffed during the relevant time frame. The court held that the decision "involved public policy considerations—balancing of various cost-benefit considerations to advance the public interest. * * [T]he discretionary function exception applied even if the NLRB abused its discretion in this case." 515 F.2d at 99.

The fundamental question is whether Congress intended the parole decisions of the former Board of Parole to be subject to judicial review of the kind sought here. The court must therefore examine "the nature and quality" of the discretion entrusted to the Board. *Smith v. United States, supra,* 375 F.2d at 248.

The Board of Parole (now the United States Parole Commission), an agency of the Department of Justice, consisted of "eight members . . . appointed by the President, by and with the advice and consent of the Senate." 18 U.S.C. § 4201 (former section).[4] The Board's parole decisions were governed by 18 U.S.C. § 4203(a) (repealed by Pub.L. 94–233 in 1976):

"(a) If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole.

"Such parolee shall be allowed in the discretion of the Board, to return to his home, or to go elsewhere, upon such terms and conditions, including personal reports from such paroled person, as the Board shall prescribe, and to remain, while on parole, in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which he was sentenced.

"Each order of parole shall fix the limits of the parolee's residence which may be changed in the discretion of the Board."

The regulations issued under the former parole statutes, 18 U.S.C. §§ 4201–4210, described the functions and duties of the Parole Board as follows:

"§ 2.2 Granting of parole.

The granting of parole rests in the discretion of the Board of Parole. The Board may parole a prisoner who is otherwise eligible if (a) he has observed substantially the rules of the institution in which he is confined; (b) there is reasonable probability that he will live and remain at liberty without violating the laws; and (c) in the opinion of the Board such release is not incompatible with the welfare of society." 28 C.F.R. § 2.2 (1972) (1973)

"§ 2.14 Reports considered.

---

3. *Accord, Kiiskila v. United States,* 466 F.2d 626, 627–8, (7th Cir. 1972). Plaintiff's exclusion from her place of employment on a military reservation was based upon commander's "exercise of discretion, albeit constitutionally repugnant . . . ." Hence the United States was exempted from liability by § 2680(a).

4. The present United States Parole Commission, "an independent agency in the Department of Justice . . . [is] comprised of nine members appointed by the President, by and with the advice and consent of the Senate." Act of March 15, 1976, Pub.L. 94–233, § 2, 18 U.S.C. § 4202.

Decisions as to whether a parole shall be granted or denied shall be determined on the basis of the application, if any, submitted by the prisoner, together with the classification study and all reports assembled by all the services which shall have been active in the development of the case. * * * In furtherance of that policy, the Board encourages the submission by interested persons of pertinent and relevant information to the Board either before or after a Board order has been issued." *Id.* § 2.14.

It is apparent that the Board, in making individual parole decisions, was vested with broad discretion. Such discretion has been described as "absolute." *Buchanan v. Clark*, 446 F.2d 1379, 1380 (5th Cir. 1971); *Tarlton v. Clark*, 441 F.2d 384 (5th Cir. 1971). The Board's discretion was necessarily broad because of the nature of the duties entrusted to it by Congress. The Board had the quasi-judicial duty of looking into facts and acting upon them with very little guidance from Congress. The statute authorizing parole, 18 U.S.C. § 4203(a), contained no objective standard for determining parole eligibility. The regulations permitted the Board to parole a prisoner who had "observed substantially" prison rules. 28 C.F.R. § 2.2, *supra.* Although this factor in the parole decision could—without conceding the point—be characterized as objective, the other determinations required by 28 C.F.R. § 2.2 were clearly subjective ones. The decision to release or not is basically a subjective one. The individual parole decision involved more than the matching of facts against a clear rule or standard.[5] Each parole decision "constitute[s] an *ad hoc* determination which neither applies an existing rule nor establishes one for future cases." *Hendry v. United States*, 418 F.2d 774, 783 (2d Cir. 1969). This court agrees with the *Hendry* court that such decisions, involving as they do the exercise of quasi-judicial power, may not, because of § 2680,

be made the basis of suits against the United States under the Tort Claims Act. The discretion of the Parole Board "to act according to [its] judgment of the best course," *Dalehite v. United States, supra,* is clearly within the discretionary function exception of § 2680.

The reasoning of the court in *Gray v. United States*, 445 F.Supp. 337 (S.D.Tex. 1978), is in accord with the above holding. In *Gray*, the plaintiff alleged she had been harmed by her mother's ingestion of the drug DES during the plaintiff's period of gestation. Plaintiff sought a recovery from the United States for its approval, through the Food and Drug Administration, of the sale of the drug without warning of its harmful effects. The court held the actions of the Food and Drug Administration discretionary and not actionable under the Tort Claims Act because of § 2680(a). It reasoned as follows:

"The discretionary acts sought to be exonerated by § 2680(a) must be conduct that brings to bear policy judgments, *the balancing of a risk-benefit formulae.* It is in those problem areas where the public imposes upon its decision makers both a *duty* and an *unrestrained liberty* to consider and construct a solution, that the results of such deliberations should be protected. Otherwise the threat of future litigation might intimidate the creativity of those decision makers burdened with the duty of working out a problem. Such is the situation before this court. * * * *There are no particular scientific tests or measuring sticks* by which the FDA must qualify a new drug. Instead the FDA is given the liberty to consider all factors it deems relevant in its own determination of a drug's safety for the public. The severity of the task delegated to the FDA demands that such an agency be given the freedom effectively to exercise its expertise. Congress has chosen the FDA to be the decision maker

5. Subsequent to the facts giving rise to this lawsuit, the Board of Parole briefly experimented with detailed guidelines for parole decision-making. *See* 28 C.F.R. Chapter 1, Part II, *esp.* §§ 2.18–2.20 (1975) published at 40 *Federal Register* 41331 (September 5, 1975). The guidelines have since been revised and are now less detailed. *Compare* 28 C.F.R. Chapter 1, Part II, *esp.* §§ 2.18–2.20 (1978). The discretion of the U.S. Parole Commission to grant or deny parole, though more structured, is still quite broad. *See id.;* 18 U.S.C. § 4206.

in this area, and its judgments in approving a drug as safe for use must be beyond private scrutiny and litigation." (emphasis added)

*Id.* at 340.

The Parole Board was charged, by statute and by regulation, with the responsibility for making judgments involving "the balancing of a risk-benefit formulae." *Gray v. United States, supra.* It had to consider the risk to society's welfare in each parole decision. Former 18 U.S.C. § 4203(a), *supra.* Balanced against the possible harm to society, the Board must have considered the possible benefits accruing from parole to both the prisoner and society. The prisoner may rehabilitate himself and become a self-respecting and a community respected person. He may contribute to social and other national ideals. He may make an economic contribution instead of being a social loss and an economic deadweight in prison. The Board's duty to make these difficult decisions was restrained by no clear statutory standard. It had "both a duty and an unrestrained liberty," [6] *Gray v. United States, supra,* to act according to its discretion. As in *Gray,* the Board did not have the aid of any "particular scientific tests or measuring sticks" to assist it in parole decision-making. To the contrary, the Board was "given the liberty to consider all factors it [deemed] relevant," *id.,* in deciding whether a prisoner should be paroled. The "nature and quality," *Smith v. United States, supra,* of the discretion entrusted by Congress to the Board demand that its quasi-judicial judgments in approving parole be insulated from private suits.

Although the gist of plaintiff's complaint is negligence in Whisenhant's parole and release, this court's holding includes the more specific allegations that the United States negligently considered Whisenhant's records, negligently reduced his sentence, negligently failed to remove him to a mental hospital and negligently failed to provide him treatment. Each of these alleged omissions or commissions appertained to the parole decision. Moreover, because the Board had the discretion to permit a parolee "to return to his home, or to go elsewhere, upon such terms and conditions . . . as the Board shall prescribe . . . .", former 18 U.S.C. § 4203, *supra,* the allegation that the United States failed to properly supervise Whisenhant after his parole also fails to state a claim.[7]

This court concludes it is without jurisdiction in the matters alleged in the complaint, therefore,

It is ORDERED, ADJUDGED, and DECREED that the complaint be, and is hereby, DISMISSED.

All costs are taxed to the plaintiffs.

---

**6.** *Compare: Coastwise Packet Company v. United States,* 398 F.2d 77, 79 (1st Cir. 1968), *cert.denied* 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274 (Coast Guard's failure to certify schooner to operate in coastal trade was decision ". . . within the discretionary exemption of the Tort Claims Act."); *In Re Air Crash Disaster Near Silver Plume, Colo.,* 445 F.Supp. 384, 403–404 (D.Kan.1977), and *see Developments in the Law—Remedies Against the United States and its Officials,* 70 Harv.L.Rev. 827, 895, 896. ("The discretionary-function exception . . . must be taken as indicating Congress' judgment that compensation is less important than avoidance of the judicial testing of certain decisions. . . .")

**7.** *See United States v. Dalehite, supra,* 346 U.S. at 36, 73 S.Ct. at 968, 97 L.Ed. at 1441; *Smith v. United States,* 330 F.Supp. 867, 870 (E.D. Mich.1971).