**G. A. PORTELLO & CO., Inc., Plaintiff,**

v.

**Earl L. BUTZ, Secretary of Agriculture and Myles J. Ambrose, Commissioner of Customs, Defendants.**

**Civ. A. No. 98–72.**

United States District Court, District of Columbia.

June 15, 1972.

John P. Meade, Washington, D. C., for plaintiff.

Joseph Hannon, Asst. U. S. Atty., Michael A. Katz, Asst. U. S. Atty., Michael H. Abrams, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

JONES, District Judge.

In this action, plaintiff seeks declaratory and injunctive relief, alleging that defendant Butz has abused his discretion and refused to follow his own regulations under the Federal Meat Inspection Act, as amended by the Wholesome Meat Act of 1967, 21 U.S.C. § 601 et seq. (1970); 9 C.F.R. § 301 et seq. (1971). The jurisdiction of this Court is invoked under 5 U.S.C. §§ 701–706, 28 U.S.C. §§ 1331, 1337, 2201 and 2202 (1970).

On December 22, 1970 defendants notified plaintiff that 353 of its 953 cartons of boneless meat offered for importation from New Zealand on December 4, 1970 had been refused entry due to "possible contamination through mishandling." Defendants refused entry to these 353 cartons of meat on the basis of a visual inspection of: (1) the cartons in which the meat had been shipped; and (2) the hold of the carrier, the Cap Colville, in which the meat had been transported.

The results of the visual inspection indicated that both the cartons in question and the hold of the ship contained dirt, debris and unknown powdered substances. No samples of meat were taken from the 353 cartons for inspection, and plaintiff's request for an additional sampling inspection was refused by defendants.

Both parties have moved for summary judgment, and their statements submitted in accord with Local Rule 9(h) indicate that there are no material facts genuinely in dispute. The court finds therefore that summary judgment would be appropriate at this juncture.

The Federal Meat Inspection Act, as amended by the Wholesome Meat Act of 1967, 21 U.S.C. § 601 et seq. (1970), provides that certain meats or meat food products shall not be imported into the United States "if such articles are adulterated or misbranded and unless they comply with all the inspection . . . standards, and all other provisions of this chapter and regulations issued thereunder. . . ." 21 U.S.C. § 620(a) (1970). The same Act provides further that the Secretary of Agriculture may by regulations prescribe the conditions under which such meat or meat food products:

. . . shall be stored or otherwise handled by any person, firm, or corporation engaged in the business of buying, selling, freezing, storing, or transporting, in or for commerce, or importing, such articles, whenever the Secretary deems such action necessary to assure that such articles will not be adulterated or misbranded when delivered to the consumer. 21 U.S.C. § 624 (1970).

The Act also provides that the term "adulterated" shall apply to any meat or

meat food product under several circumstances, one of which is:

. . . if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health. . . . 21 U.S.C. § 601(m) (4) (1970).

Pursuant to the authority granted in the Act, the Secretary has issued regulations set out in 9 C.F.R. § 301 et seq. (1971). The regulations apply the term "adulterated" exactly as the Act does, including the specific application cited above. 9 C.F.R. § 301.2(aa) (4) (1971). The regulations likewise adopt the Act's restrictions on importation of adulterated or misbranded meat:

No product offered for importation from any foreign country shall be admitted into the United States if it is adulterated or misbranded or does not comply with all the requirements of this subchapter that would apply to it if it were a domestic product. 9 C.F.R. § 327.3(a) (1971).

As to the conditions of shipping or otherwise transporting meat subject to the provisions of the Act, the regulations provide:

Compartments of steamships, sailing vessels, railroad cars and other means of conveyance transporting any product to the United States . . . and all other devices used in moving and handling any product offered for importation into the United States, shall be maintained in a sanitary condition. 9 C.F.R. § 327.8 (1971).

It is undisputed that the meat offered for importation here was refused entry because of "possible contamination through mishandling." This conclusion was based upon a visual inspection of: (1) the cartons in which the meat had been shipped; and (2) the hold of the carrier, the Cap Colville, in which the meat had been transported. The results of the visual inspection indicated that both the cartons in question and the hold of the ship contained dirt, debris

and unknown powdered substances. In refusing entry under these circumstances, the inspector relied for authority upon 9 C.F.R. §§ 301.2(aa) (4), 327.-3(a) and 327.8, *supra.*

Plaintiff contends that defendants cannot refuse entry on the basis of 9 C.F.R. § 327.8 alone, because that section does not specifically authorize the rejection of meat carried in unsanitary compartments and does not specify any standards for determining sanitary conditions. Plaintiff argues that cartons containing frozen meat offered for importation may not be refused entry unless analysis of samples from each consignment show that the meat is adulterated, misbranded or otherwise ineligible for entry. Plaintiff bases its contention upon 9 C.F.R. §§ 327.21(a) and (b), 327.10(c) and, by analogy, 318.2(d).

The following regulations provide that under certain circumstances, there is to be an inspection not only of conditions and markings on containers but also of samples of the meat itself taken from each consignment. One such provision, not cited by plaintiff, requires that:

A sufficient sampling inspection shall be made of each consignment of foreign chilled fresh or frozen fresh meat, including defrosting if necessary, to determine its condition. Inspection standards for foreign chilled fresh or frozen fresh meat shall be the same as those used for domestic chilled fresh or frozen fresh meat. (See § 327.21). 9 C.F.R. § 327.6(k) (1971).

The regulation referred to in section 327.6(k), *supra,* provides in part:

All lots of imported frozen boneless manufacturing meat will be sampled and such samples defrosted for inspection in accordance with this paragraph. . . . 9 C.F.R. § 327.21(a) (2) (1971).

After such inspection, a reinspection of such samples will be provided "only if there is reason to question the judgment of the inspector in making the evaluation." 9 C.F.R. § 327.21(b) (1971).

It is plaintiff's contention that such an inspection by sampling of the meat itself must be performed before meat of the kind in question here can be refused entry and that he is entitled to reinspection under 9 C.F.R. § 327.21(b), *supra,* because the refusal of entry on the basis of the unsanitary condition of the cartons and the ship's hold gives reason to question the judgment of the inspector in making that evaluation. Plaintiff, however, misreads 9 C.F.R. § 327.21(b) which provides for reinspection, as was stated above, only if there is reason to question the judgment of the inspector in making an evaluation by sampling under 9 C.F.R. § 327.21(a). Such an evaluation has not been made in this case. Indeed, it is defendants' contention that such an inspection is called for only after a shipment offered for importation has passed certain preliminary inspection tests of sanitary packaging and shipping. Presumably, defendants would take the same position with regard to the inspection by sampling required under 9 C.F.R. § 327.6(k) (1971), *supra.*

In support of its position, plaintiff also cites 9 C.F.R. § 327.10(c) (1971) and, by analogy, 9 C.F.R. § 318.2(d) (1971). The former section provides:

> If the inspection of the portion of the product withdrawn from a consignment indicates that the consignment is adulterated or misbranded or otherwise is not eligible for entry under this part, the consignment shall be identified as 'U.S. Refused Entry' and handled as prescribed in § 327.13(a). . . . 9 C.F.R. § 327.10(c) (1971).

Plaintiff reads this provision as requiring an inspection by sampling before shipment may be refused entry.

The section immediately preceding that just cited, however, provides:

> The outside containers of all products offered for importation from any foreign country . . . which, upon inspection by Program inspectors, are found not to be adulterated or misbranded and to be otherwise eligible for entry into the United States under this part . . . shall be marked with the official inspection legend prescribed in § 312.7 of this subchapter. All products so marked . . . shall be admitted into the United States. . . . 9 C.F.R. § 327.10(b) (1971).

The force of this section is clearly to recognize preliminary inspections for sanitary packaging, storing and shipping which would precede any inspections by sampling of the contents of the shipment itself.

Plaintiff also cites by analogy 9 C.F.R. § 318.2(d) which deals with inspection of meat held in storage at "official establishments," as the latter are defined at 9 C.F.R. § 301.2(i) (1971). Section 318.2(d) provides in part that:

> . . . a determination regarding adulteration may be deferred if a product has become soiled or unclean by falling on the floor or in any other accidental way or if the product is affected with any other condition which the inspector deems capable of correction, in which case the product shall be cleaned (including trimming if necessary) or otherwise handled in a manner approved by the inspector to assure that it will not be adulterated or misbranded and shall then be presented for reinspection and disposal in accordance with this section. . . . 9 C.F.R. § 318.2(d) (1971).

This section clearly gives the inspector discretion to defer any determination as to adulteration once adulteration has been suspected from a preliminary inspection and does not require him to order cleaning, trimming, or any other treatment or inspection under section 318.2(d).

■ The regulations vest considerable discretion in the official inspectors in their determinations as to the adulteration or misbranding of meat both in domestic establishments and at ports of entry. That discretion is consonant with the policy of the Act, as stated in 21 U.S.C. § 602 (1970). It is clear from

that section that the policy of the Act and the regulations is above all to protect the health and welfare of consumers.

The regulations relied upon by the inspectors in this case, 9 C.F.R. §§ 301.-2(aa) (4), 327.3(a) and 327.8, *supra,* vest particularly broad discretion in the inspectors. Section 327.8, for example, requires that all equipment and means of conveyance, including compartments of ships, used in handling meat offered for importation, "shall be maintained in a sanitary condition." No standard of acceptable sanitary conditions, however, is set out in that or in any other regulation, whereas Part 308 of the regulations is considerably more explicit as to what constitutes sanitary facilities and equipment in official establishments for the slaughtering and processing of meat. Even there, however, section 308.15 vests discretion in the inspector as to whether facilities or equipment are in his opinion insanitary.

█ More specific criteria as to what would constitute compliance with the requirements of sanitary conditions in 9 C.F.R. §§ 301.2(aa) (4) and 327.8 would be desirable, but it is certainly within the scope of the inspector's discretion to refuse entry to meat when it has been shipped or handled under conditions which the inspector judges to be insanitary "whereby it *may* have become contaminated with filth, or whereby it *may* have been rendered injurious to health." 9 C.F.R. § 301.2(aa) (4) (1971) (Emphasis supplied). To insist, as does plaintiff here, that an inspector can enforce sections 301.2(aa) (4) and 327.8 only by ordering a sampling inspection under section 327.21(a) or section 327.6 (k), *supra,* is to render the former sections completely superfluous and without any force. That was surely not the intent of the Secretary in issuing those regulations.

Although the chief inspector in this case indicates in his affidavit that in twenty one years' experience as an inspector he "had not previously rejected meat because of the dirty conditions in a ship's hold or on the meat cartons," nevertheless those conditions in this case "were the worst that [he had] witnessed in all [his] years of experience." Affidavit of Robert E. Goertz at 3.

The chief inspector's affidavit also makes it evident that he at first considered rejecting the entire 4,678 carton shipload of meat stored in the hold of the Cap Colville. Upon further consideration, however, he permitted sorting of the outwardly clean cartons from those that were outwardly dirty; thus each carton was separately inspected. As a result, 3,460 cartons (including 600 owned by plaintiff) were accepted for the additional inspection by sampling and subsequently passed. A total of 1,218 outwardly dirty cartons (including plaintiff's 353 in issue here) were refused entry under the regulations governing the general inspection. Affidavit of Robert E. Goertz at 3.

█ Plaintiff also submitted evidence of at least one instance where a shipment was at first refused entry because of external conditions but was then permitted to be inspected by sampling, re-packaged and subsequently approved for importation. Again, such a decision would be within the discretion of an inspector, who is not required to make all or nothing determinations as to possible adulteration from shipping conditions.

Two final matters deserve mention here. First, plaintiff contends that a reinspection of the entire shipload should have been ordered because of the alleged improper participation in the original decision to refuse entry by Richard A. Crumpley, a retired meat inspector, who, it is further alleged, later offered his services to plaintiff to help secure reversal of that decision. The affidavits of the official inspectors who participated in that decision state that Crumpley had no part in the decision to refuse entry. An investigation into this matter was conducted by the Office of the Inspector General of the Department of Agriculture. The report of this investigation, included in the official record of this case, concludes that

Crumpley in no way influenced the decision of the official inspectors in this case.

Finally, plaintiff has introduced certain exhibits consisting of an affidavit by plaintiff's counsel and several color photographs purportedly representing the cartons of meat refused entry in this case. Plaintiff's affidavit in support of the exhibit of color photographs does not meet the requirements of Fed.R.Civ. P. 56(e).

This court is not in a position to gainsay the findings of experienced inspectors acting within the scope of the discretion vested in them by the regulations and the clear policy of the Federal Meat Inspection Act. *See* Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Power Reactor Development Co. v. International Union of Elec., Radio and Machine Workers, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961); *see also* Sugarman v. Forbragd, 267 F.Supp. 817, 822–824 (N.D. Cal.1967), aff'd 405 F.2d 1189 (9th Cir. 1968), cert. den. 395 U.S. 960, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969).