**Cleo F. SHOULTZ, Plaintiff-Appellant,**

**v.**

**MONFORT OF COLORADO, INC., a Delaware Corporation; Kenneth W. Monfort, Samuel D. Addoms, D.W. Anderson, Robert Angelotti, Walter H. Huber and Joseph Blair, individually and as officials of the U.S. Department of Agriculture, Defendants-Appellees.**

No. 82–1293.

United States Court of Appeals,
Tenth Circuit.

Feb. 7, 1985.

Barry D. Roseman, Denver, Colo. (Edward H. Sherman, Denver, Colo., was also on the brief), for plaintiff-appellant.

Bruce A. Menk, Hall & Evans, Denver, Colo. (Alan Epstein, Hall & Evans, Denver, Colo. and Gary B. Blum, Denver, Colo., were also on brief), for defendants-appellees Monfort of Colorado, Inc., and Kenneth W. Monfort and Samuel D. Addams.

Janice Chapman, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., was also on brief), for defendants-appellees Robert Angelloti, D.W. Anderson, Walter H. Huber and Joseph Blair.

Before HOLLOWAY, Chief Judge, and SETH and McKAY, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiff-appellant Cleo F. Shoultz timely appeals the dismissal of his action and amended complaint for failure to state a claim upon which relief may be granted. Plaintiff brought this action under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1985 and 1986, and 21 U.S.C. § 675.[1] We affirm.

---

1. 21 U.S.C. § 675 (1976) is a part of the Federal Meat Inspection Act, as amended. Section 675

provides:

## I

Plaintiff Shoultz was employed as a meat inspector by the United States Department of Agriculture (USDA) Food Safety and Quality Service, Meat and Poultry Inspection Program. Before October 4, 1977, he was assigned to inspection duties at the Greeley, Colorado, meat processing and packing plant of defendant Monfort of Colorado, Inc. (defendant company). Plaintiff alleged that he required compliance with the appropriate statutes, rules and regulations but that defendant company and its individual officers, Kenneth W. Monfort and Samuel D. Addoms, knowingly and intentionally violated USDA regulations and sought to have the USDA discharge him from his employment. Plaintiff alleged that, as a result of this action, the remaining defendants as officials of the USDA (federal defendants) ousted plaintiff from his position at the defendant company and transferred him to another jurisdiction. I R. 17–23.

The amended complaint contains three separate claims for relief. In his first claim, plaintiff alleged that the defendant company and defendants Monfort and Addoms conspired with each other and with the federal defendants to prevent plaintiff from holding his office under the United States or from discharging his duties and to induce plaintiff to leave Colorado and to injure him or his property on account of his lawful discharge of the duties of his office, all in violation of 42 U.S.C. § 1985(1). Plaintiff also alleged that the federal defendants, having knowledge that these acts were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected and refused to do so, all in violation of 42 U.S.C. § 1986.

In his second claim, plaintiff alleged that on or about May 25, 1977, he received a serious on-the-job injury at defendant company for which defendant company is liable. Plaintiff also alleged that he refused to sign a release to defendant company and as a result, the company and defendants Monfort and Addoms conspired with each other and with the federal defendants to induce and persuade plaintiff's employer to discharge him. In doing so, plaintiff alleged defendants conspired to deter plaintiff from initiating an action for recovery for the damages he suffered, all in violation of 42 U.S.C. § 1985(2). In his third claim, plaintiff alleged that the federal defendants violated his Fifth Amendment rights, and in particular, his right to initiate and prosecute a civil action for damages in any court of the United States. In each claim plaintiff alleged that the acts were done maliciously. I R. 23–27.

After a hearing on defendants' motions, the district court dismissed the amended complaint. I R. 32. In dismissing as to the federal defendants the court stated that "[a]s to the implied remedy under the Meat Inspection Act, the remedy if any is criminal and I find no intent on the part of Congress to imply a tort remedy." III R. 30. The court stated that as to the constitutional tort theory, "the constitutional tort is a tort having to do with principles of constitutional law." *Id.* "It does not have to do with ... employer-employee relationships." *Id.* "I don't think that the courts have gone so far as to say they're going to extend the statutes to create implied abilities to get into the federal courts." *Id.* "But, more importantly, federal employees have employment rights ... greater than the rights of anyone else." *Id.* at 31. He also stated that he didn't think it was possible to state a claim for relief against the federal defendants for exercising authority

Any person who forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person while engaged in or on account of the performance of his official duties under this chapter shall be fined not more than $5,000 or imprisoned not more than three years, or both. Whoever, in the commission of any such acts, uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. Whoever kills any person while engaged in or on account of the performance of his official duties under this chapter shall be punished as provided under sections 1111 and 1114 of Title 18.

under what he "believe[d] to be their qualified immunity." *Id.*

The court also dismissed as to the non-federal defendants, stating that "a claim can be pleaded under state law for tortious interference with contract" and expressing doubt that there was diversity of citizenship, *id.* at 32–34, which we note was not averred in the amended complaint here. The judge relied on *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).

On appeal, plaintiff contends that he has stated a claim on which relief can be granted under 42 U.S.C. § 1985; that he has a valid claim under federal common law; that he has averred a claim on which relief can be granted under the constitutional tort doctrine; and that the federal defendants are not immune, as a matter of law, under the circumstances of this case.

## II

■ We must, of course, follow the rule that

a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). The well-pleaded material allegations of the complaint are liberally read and accepted for the purposes of this appeal as true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965).

■ As to his 42 U.S.C. § 1985 claim against the non-federal defendants, plaintiff says that the ruling in *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1344 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977), relied on by the district judge, should not be applied here. *Stern* held that a § 1985(1) complaint is insufficient if it only alleges injury resulting from complaints about the plaintiff officer's official performance, lodged by the defendants with the officer's government superiors. The court reasoned that it should not lightly impute to Congress an intent to invade the right to petition the Government for redress of grievances, and that it was not persuaded that Congress intended § 1985(1) to curtail efforts for redress in these circumstances which involved complaints about IRS agents. Plaintiff says that while the right to petition for redress of grievances is important, this right must be balanced against the extremely strong public interest in the integrity of the meat inspection program and public confidence in this program; if meat packing companies are able to cause the removal of inspectors because of their vigorous enforcement of the law, these inspectors will think twice before performing their duties.

We agree with the district court that the *Stern* rationale should apply here. The alleged complaints by the non-federal defendants to the plaintiff's government superiors in the Department of Agriculture here are analogous to the complaints about the I.R.S. agent to his superiors in *Stern.* The First Amendment right to petition for a redress of grievances is implicated here as well. We are likewise "not persuaded that Congress intended the language of § 1985(1) to curtail this type of redress-seeking under any circumstances." *Stern,* 547 F.2d at 1345; *see also Bradley v. Computer Sciences Corp.,* 643 F.2d 1029, 1033 (4th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981). Thus we conclude that it was proper to dismiss as to the non-federal defendants the § 1985(1) claim alleging prevention of performance of duties by the plaintiff.

■ There are allegations in the second cause of action in the amended complaint of a claim under 42 U.S.C. § 1985(2) of obstructing justice and intimidating a party, witness or juror "in any court of the United States ..." This claim is based on allegedly negligent injury of plaintiff at the plant of defendant Monfort of Colorado, Inc., when a hind quarter of beef broke

loose from a conveyor belt and injured plaintiff. In essence, plaintiff alleged that the non-federal defendants sought to procure a release and to persuade and induce plaintiff not to file an action for the injuries suffered, and that they conspired to deter, by force, intimidation or threat, plaintiff's initiating, prosecuting and testifying in an action for the damages he suffered.

■ We note, however, that the plaintiff did not allege that there was any basis for a diversity action against Monfort of Colorado, Inc., which could be prosecuted in a federal district court, or any federal question claim which might be maintained in the federal courts. Since § 1985(2) concerns only such acts of conspiracy, force, intimidation or threat against "any party or witness in any court of the United States," no viable claim under § 1985(2) is stated. This provision does not support a claim for such interference with a proceeding in a state court. Since allegations are not made here that the plaintiff was injured by obstruction of a federal court proceeding, a § 1985(2) claim of this sort was not stated. *See Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 348 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

### III

■ As to his federal common law claim against the non-federal defendants, plaintiff says that while the Federal Meat Inspection Act, 21 U.S.C. §§ 601, *et seq.,* did not expressly provide a civil action for damages arising out of interference with his contract of employment and with performance of his duties as a federal meat inspector, such a remedy should be inferred from the statute and indeed must be inferred to avoid inconsistent results in similar situations and thus subject the rights and the duties of the United States to exceptional uncertainty, quoting *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), and citing 21 U.S.C. § 675. Plaintiff contends that the four-part test for implication of private

remedies of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) is met. Plaintiff also says that provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages.

As plaintiff contends, "provision of a criminal penalty does not necessarily *preclude* implication of a private cause of action for damages." *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). The Court has reasoned that

[i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39 [36 S.Ct. 482, 484, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460 [94 S.Ct. 690, 694, 38 L.Ed.2d 646] (1974) *(Amtrak).* Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 423 [95 S.Ct. 1733, 1740, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey,* 379 U.S. 134 [85 S.Ct. 292, 13 L.Ed.2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler,* 373 U.S. 647, 652 [83 S.Ct. 1441, 1445, 10 L.Ed.2d 605] (1963); cf. *J.I. Case Co. v. Borak,* 377 U.S. 426, 434 [84 S.Ct. 1555, 12 L.Ed.2d 423] (1964); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394–395 [91 S.Ct. 1999, 2003–4, 29 L.Ed.2d 619] (1971); *id.,* at 400 [91 S.Ct.

at 2006] (Harlan, J., concurring in judgment).

*Id.* at 78, 95 S.Ct. at 2088.

The Court has since "plainly stated that our focus must be on the intent of Congress." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 377, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982); *see Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). The ascertainment of this intent involves examination of the original statute, and also study of any comprehensive reexamination and amendment of the statute and the contemporary legal context in which the statutory revision occurred, including whether an implied right of action was part of that context at the time of the revision of the statute. *Curran,* 456 U.S. at 381–82, 102 S.Ct. at 1840–41. *See also Herman & MacLean v. Huddleston,* 459 U.S. 375, 385–86, 103 S.Ct. 683, 689–90, 74 L.Ed.2d 548 (1983); *Chavez v. Freshpict Foods, Inc.,* 456 F.2d 890, 894–95 (10th Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972).

First, we turn to the wording of the original 1907 Act. 34 Stat. 1260–65. We find nothing in the provisions of the 1907 Act from which a private right of action in favor of meat inspectors can be implied, nor does plaintiff cite any such provisions. His reliance is placed instead on 21 U.S.C. § 675, added in 1967 to the statute. *See* note 1, *supra.* Furthermore, we find no support in the wording of 21 U.S.C. § 675 for implication of a private right of action in plaintiff's favor. Although the section

provides criminal sanctions for assaulting, resisting and other interference with meat inspectors, no language in § 675 implies any damage remedy in favor of them. Plaintiff points also to the grant of jurisdiction to the district courts in § 674 "to enforce, and to prevent and restrain violations of, this chapter, and . . . in all other kinds of cases arising under this chapter." Although these provisions are broad, they seem to be related to various enforcement proceedings.

In addition, while the 1907 Act underwent a comprehensive reexamination and amendment in 1967, an implied right of action was not part of the contemporary legal context in which the statutory revision occurred. We find no evidence that an implied right of action had been recognized in favor of meat inspectors by 1967, and plaintiff points to no such evidence.

The legislative history clearly indicates the intent of Congress in amending the Federal Meat Inspection Act in 1967. In connection with the 1967 amendments made by S.2147, the Committee on Agriculture and Forestry stated:

> The committee feels that these and other provisions will assure consumers of wholesome and healthy meat products, and further, that livestock producers and conscientious meatpackers and operators will benefit by the elimination of the unscrupulous in the meat industry.

S.Rep. No. 799, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad. News 2188, 2191.[2] The House bill was

---

**2.** After consideration of all viewpoints, the Committee recommended the bill which it felt would

(1) broaden the present meat inspection program by establishing a Federal-State cooperative arrangement under which the Federal Government would provide financial, technical, and scientific assistance to State agencies in order to improve the quality of State meat-inspection services. This financial aid could amount to as much as one-half the cost of a State program;

(2) modernize and combine present statutes relating to meat inspection;

(3) give the Secretary of Agriculture needed authority over wholesalers, truckers, warehousemen, brokers, renderers, and animal

food manufacturers in order to control the traffic in unfit meat and meat products. This would provide additional insurance against the possibility of these products being sold to unsuspecting consumers for use as human food;

(4) provide the Secretary of Agriculture with authority to immediately impose Federal standards on intrastate commerce at the request of a Governor; and

(5) provide, in any event, that the Secretary of Agriculture may impose Federal standards on any intrastate plant if he determines that the plant is producing adulterated meat or meat food products for distribution which would clearly endanger the public health. Under this provision the Secretary would noti-

passed in lieu of the Senate bill after substituting for its language much of the text of the Senate bill. *Id.* at 2188. It is apparent that the policy of the Federal Meat Inspection Act, as amended by the Wholesome Meat Act of 1967, as stated in 21 U.S.C. § 602 (1970) "is above all to protect the health and welfare of consumers." *G.A. Portello & Co., Inc. v. Butz,* 345 F.Supp. 1204, 1208 (D.D.C.1972). Because the plaintiff is not bringing this action as a consumer, or as a livestock producer or meatpacker or operator, but as a federal meat inspector, we cannot say that plaintiff is "one of the class for whose *especial* benefit the statute was enacted." *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088.

Nor are we persuaded that the implication of a private action in favor of meat inspectors themselves would effectively aid the primary congressional goals. *See id.* And lastly, we feel it appropriate in this instance that persons in plaintiff's circumstances be relegated to remedies created by state law. *See id.* at 78, 95 S.Ct. at 2088.

In sum, we cannot agree that the federal courts should imply a private remedy in favor of meat inspectors in these circumstances. *See Pacific Trading Co. v. Wilson & Co., Inc.,* 547 F.2d 367, 370–71 (7th Cir.1976); *Mario's Butcher Shop & Food Center, Inc. v. Armour & Co.,* 574 F.Supp. 653, 654 (N.D.Ill.1983).

### IV

With respect to his claim based on the constitutional tort theory of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), plaintiff says that if a federal employee's supervisors take actions calculated and intended to impair, impede, and prevent the employee from exercising his constitutionally protected right to sue a third party for damages, then that interference with constitutional rights is itself actionable. Plaintiff argues that the intentional tort provision in the Federal Tort Claims Act does not preclude the assertion of a *Bivens* claim in cases arising under the statute as well. Plaintiff also says that the Federal Tort Claims Act remedy is not as effective as the *Bivens* remedy.[3]

In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), an aerospace engineer employed at the George C. Marshall Space Flight Center was demoted by the Director of the Center for making a number of public statements to the news media highly critical of the Center, and allegedly false and misleading. While his administrative appeal from the demotion was pending, the engineer filed an action against the Director in an Alabama state court seeking to recover damages for violation of his First Amendment rights, and the Director removed the action to the federal court. In rejecting the engineer's claim the Supreme Court noted that the cases most relevant to the problem before them were "those in which the Court has held that the Constitution itself supports a private cause of action for damages against a federal official. *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)." *Id.* 103 S.Ct. at 2407–411. Referring to *Carlson,* 446 U.S. at 18–19, 100 S.Ct. at 1471–72, the Court stated that a

---

fy the Governor of the State of the transgression and would take affirmative action only if the Governor failed to do so.
S.Rep. No. 799, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 2188, 2190–91.

**3.** The amended complaint alleged in various places that the "individual official defendants" sought to persuade plaintiff to leave the Greeley plant where he was stationed, that they combined and agreed with the other individual de-

fendants "to oust Plaintiff from his position and office at" Monfort of Colorado, "and eventually to discharge him or injure him and have agreed to remove him" and "to deprive him of the conditions of his employment," and that the "individual official defendants" by the actions described deprived plaintiff of rights granted by the Fifth Amendment and in particular of the right to initiate and present a civil action for damages in any court of the United States. I R. 26–27.

*Bivens* action could be defeated in two situations: first, where the Court could discern special factors counselling hesitation in the absence of affirmative action by Congress; and second, where there was a congressional determination foreclosing the damages claim and making the Federal Tort Claims Act exclusive. *Id.* 103 S.Ct. at 2410.

The Court then considered whether there were "reasons for allowing Congress to prescribe the scope of relief that is made available to federal employees whose First Amendment rights have been violated by their supervisors." *Id.* 103 S.Ct. at 2412. The Court noted that

> [f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies. Constitutional challenges to agency action, such as the First Amendment claims raised by petitioner, are fully cognizable within this system.

(footnote omitted). *Id.* 103 S.Ct. at 2415. The Court stated that

> if management personnel face the added risk of personal liability for decisions that they believe to be a correct response to improper criticism of the agency, they would be deterred from imposing discipline in future cases. In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service.

*Id.* 103 S.Ct. at 2417. The Court, as in *United States v. Standard Oil Co. of California*, 332 U.S. 301, 302, 67 S.Ct. 1604, 1605, 91 L.Ed. 2067 (1947), declined "to create a new substantive legal liability without legislative aid and as at the common law" because it was convinced that "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Bush,* 103 S.Ct. at 2417.

■ Here plaintiff is also attempting to bring a private cause of action for damages against federal officials for allegedly violating his Fifth Amendment rights and, in particular, his right to initiate and prosecute a civil action for damages. Because plaintiff's claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States,[4] we can not supplement that regulatory scheme with a new, nonstatutory damages remedy. *Id.* 103 S.Ct. at 2417; *Vest v. United States Department of the Interior,* 729 F.2d 1284 (10th Cir.1984). Accordingly, we hold that plaintiff does not state a claim on which relief can be granted based upon the constitutional tort theory established by *Bivens.*

## V

There remains plaintiff's claim asserted under 42 U.S.C. § 1986 against the "individual official defendants," ¶ 18 of the Amendment Complaint, I R. 24, for allegedly neglecting and refusing to prevent wrongs which the non-federal defendants had conspired to commit in violation of 42 U.S.C. § 1985. However, since we have held that no viable claim is stated under § 1985, the plaintiff has no valid claim premised on § 1986. *Santistevan v. Loveridge,* 732 F.2d 116, 118 (10th Cir.1984).

## VI

In conclusion, we are not persuaded by any of plaintiff's contentions that the dis-

---

**4.** It does not appear that plaintiff's position, meat inspector in the USDA's Food Safety & Quality Service, Meat & Poultry Inspection Program, is specifically excepted from the competitive service. *See* 5 U.S.C. § 2102 (1976). Therefore, plaintiff is protected by the same elaborate, comprehensive scheme, relied on by the Supreme Court in *Bush,* by which improper actions of supervisors, such as removal, may be redressed. *See* 5 U.S.C. § 7501 (1976), 5 C.F.R. § 752.201–§ 752–203 (1977).

missal of the action by the district court was in error. Accordingly, the judgment is

AFFIRMED.