**Waydann LAMBERTSEN, Plaintiff,**

**v.**

**UTAH DEPARTMENT OF CORRECTIONS Greg Jacquart, Preston Kay, Randy Southwick, Bill East, Rubin Nunlley, Calvin Fox, and Lyle Wilde, Defendant.**

No. 94–C–400–S.

United States District Court,
D. Utah,
Central Division.

April 26, 1995.

---

Robert W. Horn, Jackson, Wyoming, for Plaintiff.

Martha S. Stonebrook, Utah Attorney General's Office, Salt Lake City, Utah, for Defendant.

## MEMORANDUM DECISION

SAM, District Judge.

### I. *INTRODUCTION*

The court has before it defendants' Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6). Because matters outside the pleadings are presented and not excluded, the court treats defendants' motion, in part, as one for summary judgment under Fed. R.Civ.P. 56. It appears to the court that defendants' affidavits are directed to counts I, II and VII of plaintiff's complaint. Accordingly, that portion of defendants' motion to dismiss directed toward those counts and alleging failure to state a claim is converted to a motion for summary judgment. The parties have been notified of the conversion and given time to submit additional evidence.

The specific facts of this matter are adequately set forth in the pleadings and the court will not repeat them here.[1] In brief, however, plaintiff was employed by the South Sanpete School District (the "School District") as an education aide. She was assigned to work at the Central Utah Academy which the School District operates to serve inmates at the Utah State Correctional Facility in Gunnison, Utah. In her complaint, plaintiff alleges two counts of sexual discrimination under federal law as well as pendent state law claims of intentional infliction of emotional distress, negligent retention of employee, invasion of privacy, and battery. Plaintiff also alleges a seventh claim for punitive damages.

### II. *MOTION TO DISMISS STANDARD*

■ When a motion to dismiss is filed, the burden is on the movant to prove that the non-movant can prove no set of facts in support of his claim which would entitle him to relief. *Shoultz v. Monfort of Colorado, Inc.,* 754 F.2d 318 (10th Cir.1985), *cert. denied,* 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The court is to presume, for purposes of considering the motion, that all well-pleaded allegations by the non-movant are true and all reasonable inferences are made in favor of the non-movant. *Lafoy v. HMO Colorado,* 988 F.2d 97 (10th Cir.1993); *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Legal conclusions, deductions, and opinions couched as facts are, however, not given such a presumption. *Mitchell v. King,* 537 F.2d 385 (10th Cir. 1976); *Swanson v. Bixler,* 750 F.2d 810 (10th Cir.1984).

### III. *SUMMARY JUDGMENT STANDARD*

■ Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[2] *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (2d Ed.1983).

■ When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the

---

1. There being no opposition and good cause appearing, defendants' Motion for Consideration of Late Filed Memorandum is GRANTED.

2. Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

record to support the nonmovant's case.[3] *Id.,* 477 U.S. at 323, 106 S.Ct. at 2552–53. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.*

■ Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party

is entitled to summary judgment as a matter of law. *Id.,* 477 U.S. 242, 106 S.Ct. 2505.

## IV. DISCUSSION

*Title VII Claims*

■ Plaintiff's First and Second Claims for relief allege unlawful sexual discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Title VII prohibits discrimination by an employer against an employee. Defendants assert that they are not plaintiff's employer for purposes of Title VII. Plaintiff contends that the extent and nature of the control asserted by defendants over the work and workplace establishes an employer-employee relationship between plaintiff and defendants for Title VII purposes.

"[W]hether a person is 'an employee under Title VII is a question of federal law'". *Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1159 (5th Cir.1986) (quoting *Calderon v. Martin County,* 639 F.2d 271, 272–73 (5th Cir.1981). Plaintiff relies on the economic realities test set forth in *Broussard v. L.H. Bossier, Inc.,* to support her position. The parties have not cited and the court is unaware of any Tenth Circuit authority addressing facts closely resembling those presented here. However, other related cases offer guidance. *See, e.g., Evans v. Mc-Donald's Corp.,* 936 F.2d 1087 (10th Cir.1991) (distinguishing between restaurant franchisor and employer of employee for purposes of Title VII); *Wheeler v. Hurdman,* 825 F.2d 257 (10th Cir.) (partner was not employee for purposes of Title VII, Age Discrimination in Employment Act, or Equal Pay Act), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98

---

3. In his dissent in *Celotex,* Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence

of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 332, 106 S.Ct. at 2557 (citations omitted).

L.Ed.2d 501 (1987); *Oestman v. National Farmers Union Ins. Co.,* 958 F.2d 303 (10th Cir.1992) (Whether insurance agent is an employee under Age Discrimination in Employment Act).

It is not absolutely clear to the court whether in the Tenth Circuit the appropriate test for determining whether a worker is an employee for purposes of Title VII is an economics realities test, a common law right to control test, a hybrid test, or some other test. In *Wheeler,* the court stated that it was "committed to use of an economic realities test in applying remedial social legislation but only where and to the extent appropriate." 825 F.2d at 271. However, in that case the court found "that the unique nature of partnership precluded the use of either the economic realities test or the control test." *Oestman v. National Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992) (discussing *Wheeler v. Hurdman,* 825 F.2d 257 (10th Cir.1987)). In *Oestman,* the court stated.

> Courts attempting to distinguish between employees and independent contractors for the purposes of interpreting federal anti-discrimination legislation have developed two primary tests: the economic realities test and the hybrid test....
>
> The hybrid test, which is most often applied to actions under Title VII, is a combination of the economic realities test and the common law right to control test.... Although the hybrid test looks at the economic realities of the situation, the focus of the inquiry is the employer's right to control the "means and manner" of the worker's performance.

The court's view is that the hybrid test is most appropriate for the circumstances presented here. *Deal v. State Farm County Mutual Ins. Co. of Texas,* 5 F.3d 117 (5th Cir.1993) (provides a helpful explanation of the hybrid test.

> In determining whether an employment relationship exists within the meaning of Title VII and the ADEA, we apply a "hybrid economic realities/common law control

test." ... The right to control an employee's conduct is the most important component of this test.... When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee and the right to set the employee's work schedule.... The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

As plaintiff notes, the critical feature which defines the employer-employee relationship between plaintiff and defendant Utah Department of Corrections ("DOC") is control. It is undisputed that DOC conducted a security check of plaintiff as a condition of her entry into the prison facility and that DOC was responsible for security in the prison classroom. To the extent plaintiff was subject to security measures within the prison grounds, she was subject to control by DOC. However, the undisputed facts also reflect the following: (1) Plaintiff was hired by the School District; (2) The School District paid her salary and benefits; (3) Work assignments, hours of work and performance evaluations were established and governed by the School District; (4) Plaintiff's supervisor at the Gunnison Academy was an employee of the School District; (5) The "Contractor's Code of Conduct" plaintiff was required to sign by DOC sets forth behavior of "independent contractor[s]" while operating within the prison grounds. In sum, the court finds that the facts reflect that while DOC controlled prison security, the School District controlled the hiring, firing, wages and benefits of school employees who were assigned to the prison school. Although DOC exercised some control over plaintiff for security purposes when she was within the confines of the prison, ultimate control over her employment was exercised by the School District. The court, therefore, concludes that DOC was not plaintiff's employer for purposes of Title VII.[4] Defendants' motion as to plain-

4. Although the court has applied the hybrid test, the court's conclusion is the same under any plausible theory or test. *See Evans v. Mc-* *Donald's Corp.,* 936 F.2d 1087, 1089 (10th Cir. 1991) ("We hold that under no plausible legal theory are defendants [plaintiff's] employer.")

tiff's First and Second claims is granted and the same are DISMISSED.

*Punitive Damages*

The court agrees with defendants that plaintiff's Seventh Claim for relief for punitive damages appears to be an extension of plaintiff's purported federal law sexual harassment claims and is not a stand alone claim. Punitive damages is a remedy available under Title VII and would normally be merged into plaintiff's Title VII claims (Claims I and II) which have been dismissed. Accordingly, defendants' motion as to plaintiffs' Seventh Claim is granted and the same is DISMISSED.

*Eleventh Amendment Immunity*

Plaintiff's Third, Fourth, Fifth and Sixth Claims for relief are state common law claims which allege, respectively, intentional infliction of emotional distress, negligent retention of employee, invasion of privacy, and battery. The Eleventh Amendment prohibits suit by a citizen against a state in federal court unless the state consents, *Eastwood v. Dept. of Corrections*, 846 F.2d 627 (10th Cir. 1988), or Congress abrogates the immunity. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The Utah Governmental Immunity Act does not operate to waive Utah's Eleventh Amendment immunity. *Richins v. Industrial Construction, Inc.*, 502 F.2d 1051 (10th Cir.1974). A state's agencies are entitled to the same immunity as the state itself. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). An official of the state acting in his or her official capacity enjoys the same Eleventh Amendment protection. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ruark v. Solano*, 928 F.2d 947 (10th Cir.1991). Defendant Department of Corrections, under the facts and circumstances presented, is a state agency immune from suit for money damages in this court. Insofar as the allegations against the individual defendants are alleged in their official capacities, they are also immune from suit for money damages in this court. Accordingly, defendants' motion to dismiss with respect to plaintiff's Third,

Fourth, Fifth and Sixth claims for relief as to DOC and the individual defendants in their official capacities is GRANTED for reasons of immunity.

*Individual Defendants in Their Individual Capacities*

Defendants assert that Count III (intentional infliction of emotional distress, Count IV (negligent retention of employee), and Count V (invasion of privacy), and County VI (battery) are also barred by the Utah Governmental Immunity Act and should be dismissed against the individual defendants in their individual capacities. In response, plaintiff simply contends that immunity is not a defense which may be raised by motion pursuant to Fed.R.Civ.P. 12.

The court disagrees with plaintiff's characterization. Nevertheless, the court is of the view that defendants have not fully developed their argument on the issue of liability in a personal capacity and, therefore, have not met their ultimate burden of persuasion. Accordingly, the court denies defendants' motion with respect to the individual defendants in their individual capacities.

## IV. CONCLUSION

In summary and for the reasons stated, defendants' motion is granted as to plaintiff's complaint against DOC and the individual defendants in their official capacity. Defendants' motion is denied as to the individual defendants in their individual capacity. However, the court, having dismissed the federal law claims, declines to exercise further jurisdiction over the pendant state law claims and the same are dismissed.[5]

---

**5.** Defendants' motion for protective order, and plaintiff's motion for scheduling and discovery

conference are now moot and, therefore, the same are DENIED.