Carmen D. BAXLEY, Administratrix of the Estate of Alan Douglas Baxley, Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 84–1475.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1985.

Decided July 18, 1985.

Thomas P. Mains, Jr., Alexandria, Va., for appellant.

Gary W. Allen, Washington, D.C. (Paula Potoczark, Asst. U.S. Atty., Alexandria, Va., Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before ERVIN, CHAPMAN and SNEE-DEN, Circuit Judges.

SNEEDEN, Circuit Judge:

 Carmen Baxley, the surviving spouse of Alan Douglas Baxley, filed a Federal Tort Claim Act (FTCA) action, in which she alleged that the Federal Aviation Administration (FAA) failed to regulate a type of aircraft known as an "ultralight flyer" in which her husband was killed. The government filed a motion to dismiss on the grounds that the action was barred by the discretionary function exception of the FTCA. *See* 28 U.S.C. § 2680(a).[1] The district court granted the government's motion and dismissed Baxley's claim on the ground that the FAA's decision not to regulate and inspect the safety of ultralight aircraft was a discretionary decision and thus under § 2680 the claim against the government was barred. We affirm.

---

1. Under the FTCA, the United States is liable for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, in general, state tort law applies in a FTCA case. But the United States may not be held liable for the discretionary functions of government employees. *See* 28 U.S.C. § 2680(a).

## I.

Baxley alleges that her husband was killed in Fauquier County, Virginia, on November 2, 1981, while attempting to fly a machine known as the "Rhyte Flyer," which is manufactured and sold by Wrong Brothers Aviation of Boca Raton, Florida. Ultralight aircraft are new aeronautical devices that look like hang gliders, but which may be equipped with powerplants, landing gear, or moveable control surfaces that increase their speed and altitude capabilities. The government concedes that at the time of Baxley's death no regulations on ultralight aircraft were in force. The government correctly points out that the FAA was in the process of promulgating regulations. Baxley alleged that the accident was caused by the myriad structural defects in the Rhyte Flyer. The district court, however, assumed the truth of Baxley's allegations and, after an oral hearing, held in a brief order that the FAA was exempt from liability.

In the interim, the Supreme Court has decided the case of *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), which analyzes the government's tort liability in cases where federal agencies are sued because of their decisions as to the scope, extent, or content of regulatory actions. The parties briefed the question of *Varig*'s applicability to this case. We believe that *Varig* is controlling and hold that the FTCA discretionary function exception bars this wrongful death suit against the United States.

## II.

The discretionary function exception of the FTCA states that the jurisdictional grant of 28 U.S.C. § 1346(b) shall not apply to the following:

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. § 2680(a).

Since the enactment of the FTCA, the courts have been faced with the question: What is a discretionary government function? *See, e.g., Indian Towing Co. v. United States*, 350 U.S. 61, 100 L.Ed. 48, 76 S.Ct. 122 (1955); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Staton v. United States*, 685 F.2d 117 (4th Cir.1982); *Somerset Seafood Co. v. United States*, 193 F.2d 631 (4th Cir.1951). These cases note that the FTCA reflects a Congressional desire to waive the government's sovereign immunity and subject the United States to liability for certain traditional common law torts, but to bar suits against agencies for their regulatory policy and planning activities. The problem in this day and age is where to draw the line.

The Supreme Court in *Varig* has provided broad guidelines for defining the scope of the discretionary function exemption. In *Varig*, the Supreme Court said that the FAA's decision to use a spot-check program to determine if aircraft complied with FAA safety regulations before issuing a certificate for the aircraft was a discretionary function. —— U.S. ——, 104 S.Ct. at 2767, 81 L.Ed.2d at 679. In a unanimous opinion reversing the Court of Appeals for the Ninth Circuit, the Supreme Court held that the FAA could not be held liable for its negligence in certificating aircraft for use in commercial aviation. *Id.*

Two similar cases were consolidated in *Varig*. The first case involved a fire on board a Boeing 707 jet manufactured by the Boeing Co. in 1958 and used by Varig Airlines, a Brazilian air carrier, from 1969 to 1973. The pilots successfully landed the plane, but 124 of the 135 persons on board died of asphyxiation. The families of the passengers and Varig Airlines sued the Civil Aeronautics Agency, the predecessor agency of the FAA, and argued that the agency was negligent in issuing a safety

certificate for the Boeing 707 in 1958 because the lavatory trash receptacle did not comply with FAA regulations requiring disposal areas to be capable of containing fire. In the companion case, Dowdle, an owner of a DeHavilland Dove aircraft, sued the FAA for property damage after his plane caught fire in midair and crashed. The DeHavilland Dove aircraft had been owned by several airlines and air taxi services. Air Wisconsin, one of the owners, contracted with Aerodyne Engineering Corp. in 1965 to install a gasoline-burning cabin heater in the airplane. Aerodyne applied for and obtained a supplemental type certificate from the FAA, which authorized it to install the heater. Dowdle purchased the plane from Air Wisconsin in 1966 and relied upon the FAA certificate as an indication of the airplane's safety.

The Supreme Court decided that neither of these plaintiffs could sue the government under the FTCA. The Court noted that the FAA had a broad statutory mandate to foster safe commercial air flight by promulgating and enforcing minimum standards for aircraft design, construction, and performance. *See* The Federal Aviation Act of 1958, 49 U.S.C. § 1421(a)(1). In *Varig*, the FAA had developed a system for enforcing safety regulations: manufacturers of aircraft had primary responsibility for complying with the safety standards at each stage of the certification process and the FAA would review the manufactur-

er's work by conducting spot-checks. The Supreme Court said that "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." —— U.S. at ——, 104 S.Ct. at 2768, 81 L.Ed.2d at 678. The Court emphasized that it was the nature of the conduct rather than the status of the employee that governs whether the discretionary function exception applies in a given case. *Id.*

### III.

This case involves the same statutory scheme; however, the difference between this case and the *Varig* case is that the plaintiff argues that the statute requires the FAA to regulate ultralight aircraft and that the FAA's failure to issue regulations constitutes negligence. But, as in *Varig*, the FAA is making a policy decision in which it chooses the extent to which it will regulate the conduct of private companies or individuals. In addition, the FAA was at the time exercising its discretion by promulgating proposed regulations to govern ultralight aircraft.[2] Thus, in this case, we are not faced with an agency's complete failure to regulate a certain product or activity. Additionally, the plaintiff has failed to show that the broad enabling legislation of the FAA makes the regulation of a particular type of aircraft mandatory.[3] Furthermore, an agency's alleged failure to

---

2. The FAA had initiated rulemaking procedures at the time of the November 1981 crash at issue in this case. On July 27, 1981, it published a Notice of Proposed Rule-Making. 46 Fed.Reg. 38, 472 (July 27, 1981). The accident occurred during the public comment period, which was extended to November 25, 1981. The new regulations, adopted on September 2, 1982, defined powered ultralight vehicles as those weighing less than 254 pounds empty weight, with a fuel capacity not exceeding five gallons, a maximum speed of 55 knots, and a power-off aerodynamic stall speed not to exceed 24 knots. 14 C.F.R. 102.1(e).

The regulations placed limits upon the operation of the aircraft over populated areas and in certain airspace and under certain weather conditions. But the FAA chose not to promulgate federal regulations on pilot certification and vehicle certification and registration, but pre-

ferred to rely upon the "ultralight community [to] assume the initiative for the development of these important safety programs." 47 Fed.Reg. 38,770. Thus, the FAA considered the need to regulate the airworthiness of ultralight aircraft and decided to regulate in some areas and not others. The plaintiff concedes in her brief that the validity of these regulations cannot be challenged. Brief for Appellant, p. 12.

3. Overall, the Act requires the FAA to establish minimum standards for aircraft safety. *See* 49 U.S.C. §§ 1421–1423. However, on its face it does not specify that ultralight aircraft is within the scope of the Act's coverage. At any rate, usually this type of statutory interpretation question—whether a particular type of activity is covered under a statute—is addressed via an administrative rulemaking or adjudication procedure and is subject to judicial review to ensure that an agency is adhering to its Congres-

comply with a statutory mandate is better addressed in an administrative forum where the advantages and disadvantages of a proposed rulemaking action may be debated by all interested groups.

As the Court pointed out in *Varig,* "there is no need for the judiciary to second-guess the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (footnote omitted). Therefore, we hold that the FAA's decision not to regulate ultralight aircraft immediately, but rather to postpone the decision and accept comments on proposed rules governing this aircraft, is the type of administrative decision covered by the FTCA discretionary function exception.

Other cases interpreting the *Varig* decision are in harmony with this view of the discretionary function exemption. *See, e.g., Hylin v. United States,* 755 F.2d 551 (7th Cir.1985) (Mine Enforcement and Safety Administration inspectors may not be held liable for negligent enforcement of mandatory mine safety standard); *General Public Utilities Corp. v. United States,* 745 F.2d 239 (3rd Cir.1984) (Nuclear Regulatory Commission not liable for its failure to warn Three Mile Island nuclear facility owners of equipment defects); *Flammia v. United States,* 739 F.2d 202 (5th Cir.1984) (Immigration and Naturalization Service may not be held liable for releasing a refugee who eventually wounded a police officer); *Feyers v. United States,* 749 F.2d 1222 (6th Cir.1984) (United States may not be held liable for failure to provide safety training for railyard workers working pursuant to government contract); *Federal Savings and Loan Insurance Corp. v. Williams,* 599 F.Supp. 1184 (D.Md.1984) (Federal agents may not be held liable for assuming substantial control over a bank's assets and then failing to operate the bank with reasonable care). *But see McMichael v. United States,* 751 F.2d 303 (8th Cir. 1985) (Defense Department may be held

liable for its inspectors' failure to enforce contractor's compliance with safety regulations).

These cases stand for the general proposition that the federal government, at least when it is performing a discretionary function, will not be held liable for torts caused by the negligent conduct of third parties, even though the government agency had a statutory mandate to regulate the conduct of the private parties. We simply do not agree with the plaintiff's argument that an FTCA suit is an essential check on an agency that purportedly refuses to comply with a statute. The purpose of the FTCA is to provide individuals with a means of obtaining tort damages from the United States for injuries negligently inflicted by U.S. employees or agents, and it should not be used to solve the entirely separate, modern problem of alleged bureaucratic inaction and ineptitude. Thus, in conclusion, we affirm the district court's decision to dismiss the complaint.

AFFIRMED.

---

sional mandate. *See generally* The Administrative Procedure Act, 5 U.S.C. § 706 (reviewing court shall decide all relevant questions of law); *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104

S.Ct. 439, 78 L.Ed.2d 195 (1983) (reviewing courts must not rubber-stamp administrative decisions they deem inconsistent with a statutory mandate).