Price A. BAUM, Plaintiff,

v.

UNITED STATES of America,
Defendant.

UNITED STATES of America,
Third–Party Plaintiff,

v.

Michael MASSEY,
Third–Party Defendant.

Margaret LEEDY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

UNITED STATES of America,
Third–Party Plaintiff,

v.

Price A. BAUM, et al.,
Third–Party Defendants.

Civ. A. Nos. HAR–90–353, HAR–90–830.

United States District Court,
D. Maryland.

May 23, 1991.

John J. Boyd, Jr., David M. Grove, Smith, Somerville & Case, Baltimore, Md., for plaintiff and third-party defendant Price A. Baum.

J. Philip Kessel, Chaikin & Karp, for plaintiff Margaret Leedy; Paul B. Tierney, Rockville, Md., of counsel.

Richard D. Bennett, U.S. Atty., Roann Nichols, David I. Salem, Asst. U.S. Attys., Baltimore, Md., for defendant and third-party plaintiff U.S.

William N. Zifchak, Sasscer, Clagett, Channing & Bucher, Upper Marlboro, Md., for third-party defendant Michael Massey.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Currently pending before this Court is Defendant and Third–Party Plaintiff United States of America's ("Government") Motion to Dismiss, or in the Alternative, for Summary Judgment, on all claims asserted against it in the above-captioned actions. Also pending is Plaintiff and Third–Party Defendant Price A. Baum ("Baum") Motion to Dismiss Counts III and IV of the third-party complaint filed by the Government in case no. HAR–90–830. The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105.6 (D.Md.).

## I. FACTS:

These suits arise out of a traffic accident which occurred on May 24, 1987, at approximately 4:40 p.m. Baum was traveling at approximately 40 miles per hour on eastbound Maryland Route 198 (Ft. Meade

Road), in Anne Arundel County, Maryland. Plaintiff Margaret Leedy ("Leedy") was a passenger in Baum's vehicle. Baum, a disabled person, was operating a specially equipped Ford van with hand controls.[1] Plaintiffs claim that a vehicle being driven on westbound Route 198 by Third–Party Defendant Michael Massey ("Massey") crossed into Plaintiffs' lane of travel while approaching a bridge over the Baltimore–Washington Parkway near an entrance ramp onto the Parkway and collided with them on the driver's side of the van.[2] Sandra Yates (now Mrs. Sandra Massey) was a passenger in Massey's vehicle.

Following the collision, the Baum vehicle caromed off the road into the grassy shoulder. It knocked down a road sign erected with 4–inch by 4–inch wooden posts, ran into a curved stone bridge payment adjacent to the eastbound lanes, ricocheted, crossed the eastbound and westbound lanes of Route 198, went over an 8–inch high curb, crossed a four foot wide sidewalk, and penetrated a steel bridge rail and cast iron bridge post mounted on an 8.25–inch parapet adjacent to the westbound lane. The guardrail broke upon impact and the van plunged 22 feet onto the right southbound lane of the Baltimore–Washington Parkway, landing on its roof. Massey's vehicle sustained only a four-inch dent to the left front fender.

On January 31, 1990, Baum filed a one-count complaint against the Government for negligence under the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2674. A separate suit containing the same or similar allegations was filed against the Government by Leedy on March 19, 1990.[3] Plaintiffs assert that the Government "negligently designed and constructed the bridge-rail system in question in violation of its own specifications, its own custom and practice, and reasonably accepted engineering principles and practices observed in the early 1950's when the structure in question was designed and constructed." The complaint further alleges that the Government "failed to maintain the bridge in question in a reasonably safe condition for highway users, notwithstanding actual knowledge that the bridge rail was 'structurally inadequate' according to defendant's own inspections." Complaints, paragraph 7.

On May 10, 1990, the Government filed a third-party complaint against Massey seeking contribution and indemnification should it be held liable for any injury to Baum. Two weeks later, the Government filed a third-party complaint in the Leedy case, again seeking contribution and indemnification from Massey. The Government also asks for contribution and indemnification from Baum for any judgment Leedy may obtain.

By order of this Court dated June 8, 1990, the two cases and all third-party claims were consolidated for all purposes.

The Government seeks to have the allegations against it dismissed, claiming that its actions were not the proximate cause of the accident. In the alternative, the Government maintains that the allegations against it are part of the discretionary function of the National Park Service, and is therefore barred by 28 U.S.C. § 2680(a).[4]

Baum has filed a Motion to Dismiss Counts III and IV of the Government's third-party complaint in the Leedy case. These are the counts that relate to the Government's contribution and indemnity claims against Baum. The Government does not oppose Baum's motion to dismiss

---

1. Baum sustained a spinal injury seven years earlier which rendered him an incomplete C4 quadriplegic with a functional level of C5–6. At the time of the accident, he had no voluntary control of his lower extremities and reduced control of his trunk. He also had reduced strength in his upper extremities and could not fully grasp with either hand.

   Baum was driving the specially equipped van under a learner's permit and needed to be accompanied by a licensed driver at all times.

2. Massey maintains that he was stopped, waiting to make a left turn, and that Baum's car crossed the center line and collided with his vehicle.

3. There is also a suit currently pending in Maryland Circuit Court for Prince George's County against Massey (*Baum v. Massey*, CAL 90–7108).

4. Because sovereign immunity is a jurisdictional issue, this Court will examine this part of the Government's motion first.

its claim for contribution. Accordingly, Count III of the Government's third-party complaint in the Leedy case is dismissed. The Government has filed an opposition to Baum's assertion that it is barred from seeking indemnification against him for this accident.

## II. BRIDGE DESIGN AND MAINTENANCE:

The Route 198 overpass over the Baltimore–Washington Parkway (structure no. 3230–024P) was designed and constructed under the supervision of the National Park Service between 1950 and 1952. The National Park Service owned and maintained the bridge until it was demolished and replaced with a new structure in 1989.

Specifications governing design and construction of the bridge were set forth in the Standard Specifications for Highway Bridges (Fifth Edition 1949), adopted by the American Association of State Highway Officials. The guidelines specified that guardrails were to be placed along side of bridges to provide for the protection of traffic. The metal to be used on bridge rails was not specified.

Cast steel was used on guardrail posts on sixteen bridge structures on Route 198. Six structures, more than one-fourth of the total number, utilized cast iron posts. Plaintiffs assert that it was widely known at the time of construction that cast iron was a more brittle material than cast steel and was an undesirable alternative to cast steel in guardrail construction.

In 1978, Federal Highway Administration ("FHWA") bridge inspectors began conducting routine inspections of National Park Service owned bridges on the Baltimore–Washington Parkway. The bridge in question in the case at bar was initially inspected on May 25, 1983, by Robert L. King ("King"), a structural engineer employed by FHWA. King specified "Steel railing structurally inadequate" in his Bridge Safety Inspection Report. King also found that the bridge itself was "critically deficient and in danger of collapse due to the deteriorated condition of the concrete in the slab." He recommended

that the bridge be replaced in fiscal year 1984.

Three years later, a different engineer, Janice Halvorsen, inspected the bridge, which was still in place. She also noted that the steel railing in place was "structurally inadequate."

In November, 1986, a requisition was issued to the National Park Service to repair or replace missing or damaged bridge railings on the Baltimore–Washington Parkway. Among those to be replaced were two rails on the south side of the Route 198 bridge over the Parkway. The rails had not been replaced six months later when the accident occurred, nor had barriers or warning signs been set in place. Concrete barriers had been placed in front of the guardrail on another bridge over the Parkway where an accident occurred six-years earlier. The National Park Service decided not to place barriers on the bridge in question following the Baum/Massey accident since the entire bridge was scheduled to be replaced the following year.

## III. MOTION TO DISMISS UNDER FTCA:

A motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court must consider well-pled allegations in the complaint as true when ruling on a motion to dismiss. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Allegations are to be construed liberally in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court must disregard the contrary allegations of the opposition party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969).

### A. FTCA Standards:

The Government maintains that the construction and maintenance of the bridge and guardrail is a discretionary function of the United States Park Service, which over-

saw the construction and continues to supervise the maintenance of the bridge. Thus, the Government argues that it preserves its sovereign immunity over any negligence caused by the construction and maintenance of the bridge and guardrail pursuant to 28 U.S.C. § 2680(a).[5] It seeks dismissal on all claims brought against it.[6]

The Supreme Court defined the parameters of the discretionary function exception to FTCA in *Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–968, 97 L.Ed. 1427 (1953). *Dalehite* involved a ship loaded with fertilizer which exploded in a Texas harbor. The fertilizer was produced at a United States facility according to governmental specifications by a private contractor. In finding that the United States enjoyed sovereign immunity and that the federal court had no jurisdiction to hear the case, the Supreme Court reiterated that "no action lies against the United States unless the legislature has authorized it." *Id.*, 346 U.S. at 30, 73 S.Ct. at 965. The Court went on to note that:

> In interpreting the exceptions to the generality of the grant [in the FTCA], courts include only those circumstances which are within the words and reasoning of the exceptions. They cannot do less since petitioners obtained their 'right to sue from Congress [and they] necessarily must take it subject to such restrictions as have been imposed.' ... [O]ur decisions have interpreted the Act to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions.

*Id.*, at 31, 73 S.Ct. at 965 (citation omitted).

After reviewing the legislative history of the FTCA, the *Dalehite* Court concluded that the FTCA reflects Congress' desire to waive governmental sovereign immunity and subject the United States to liability in certain traditional common law tort cases only. It was not meant to alter immunity in setting regulatory policy and planning activities. *See also Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Baxley v. United States*, 767 F.2d 1095, 1096 (4th Cir.1985).

The *Dalehite* Court then delineated two situations in which the government was exempted for liability under the act:

> The first deals with acts or omissions of government employees, exercising due care in carrying out statutes or regulations whether valid or not. It bars tests by tort action of the legality of statutes and regulations.... [The second] excepts acts of discretion in the performance of governmental functions or duty 'whether or not the discretion involved be abused.' Not only agencies of government are covered but all employees exercising discretion.

> The discretion protected by the section ... is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law.

*Id.*, 346 U.S. at 33–34, 73 S.Ct. at 966–967.

The Court then concluded that:

> [T]he 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules or operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the opera-

---

**5.** 28 U.S.C. § 2680—Exceptions, states that:

The provisions of this chapter (federal tort claims procedure) and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**6.** The government seeks summary judgment on this issue. However, granting the government's motion based upon sovereign immunity would be the equivalent of finding that Plaintiffs never had a right to bring an action against the government in this Court. Therefore, this Court finds that it is more appropriate to term this as a motion to dismiss.

tions of government in accordance with official directions cannot be actionable. *Id.*, at 34–36, 73 S.Ct. at 967–968.

■ Based upon this ruling, two separate types of governmental action have been protected from FTCA liability. One type is generally called planning decisions. Planning decisions encompass those actions of government agencies and employees relating to questions of planning and design, delegation of authority, location, function, and materials employed. These are inherently discretionary in nature due to the judgment and policy decisions involved. There was to be no FTCA liability involving decisions arising from these sorts of decisions. *See, e.g., Boyle v. United Technologies Corp.*, 487 U.S. 500, 511–12, 108 S.Ct. 2510, 2517–18, 101 L.Ed.2d 442 (1988); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984); *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir.1987); *Wright v. United States*, 568 F.2d 153 (10th Cir.1977), *cert. denied*, 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978); *Gercey v. United States*, 540 F.2d 536 (1st Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977).

■ The second type of action protected is usually referred to as operational decisions. In cases dealing with operational decisions, i.e., decisions which affect the daily operation of government, when a government agency or official is acting without reliance on a fixed or readily ascertainable standard, the judgment or decision is deemed discretionary, thus squarely falling within the discretionary function exception to the FTCA. *Varig Airlines*, 467 U.S. at 814–15, 104 S.Ct. at 2764–65; *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978). In general, sovereign immunity is not waived when a government employee or agency performs an operational decision, or discretionary function, even if such function is performed in a negligent manner or constitutes even a gross abuse of discretion. *See, e.g., In re "Agent Or-*

*ange" Product Liability Litigation*, 818 F.2d 210 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Barnson v. United States*, 816 F.2d 549 (10th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *Aslakson v. United States*, 790 F.2d 688 (8th Cir.1986); *Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941 (D.C.Cir.1975), *cert. denied*, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *DePass v. United States*, 479 F.Supp. 373 (D.Md.1979). Conversely, if there is a set governmental policy, standard or regulations by which an action is measured which has not been properly followed, an official's decision is not discretionary and is not within this FTCA exception. *Berkowitz v. United States*, 486 U.S. 531, 544, 108 S.Ct. 1954, 1962, 100 L.Ed.2d 531 (1988); *Kennewick Irrigation District v. United States*, 880 F.2d 1018 (9th Cir.1989); *Barton v. United States*, 609 F.2d 977 (10th Cir.1979). This, however, is limited to a regulation or standard that "leaves no room for an official to exercise policy judgment in performing a given act...." *Berkowitz*, 486 U.S. at 546–47, 108 S.Ct. at 1963–64.

■ Recent decisions of the Supreme Court have emphasized that "[t]he basis for the ... exception [to FTCA] was Congress' desire to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1958–59, *quoting, Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. The Court has cautioned, however, that "[t]he exception ... protects only governmental actions and decisions based on considerations of public policy." *Id.*, 486 U.S. at 537, 108 S.Ct. at 1959. *See also Piechowicz v. United States*, 885 F.2d 1207, 1211–12 (4th Cir.1989). When analyzing FTCA claims, courts must take into account the underlying basis for the discretionary function exception. *Varig Airlines*, 467 U.S. at 813–14, 104 S.Ct. at 2764–65.

Many courts have substituted or modified the operational/planning distinction

with a more unitary case-by-case "functional approach which focuses on 'the nature and quality of the discretion involved in the challenged conduct.'" *Gray v. Bell*, 712 F.2d 490, 513 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), *quoting, Smith v. United States*, 375 F.2d 243, 246 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). *See also, First National Bank in Albuquerque v. United States*, 552 F.2d 370, 374–77 (10th Cir.), *cert. denied*, 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977); *Downs v. United States*, 522 F.2d 990, 997 (6th Cir.1975). The Supreme Court recent rulings in *Berkowitz, supra,* and in *Varig Airlines, supra,* that "[t]he basis for the ... exception [to FTCA] was Congress' desire to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,'" and its subsequent conclusion that "[t]he exception ... protects only governmental actions and decisions based on considerations of public policy," would seem to support applying this functional unitary line of reasoning in FTCA analysis.

### B. Improper Design and Construction and Failure to Erect Barrier:

Plaintiffs in the case at bar base their claims against the Government upon claims of negligence in the design and construction, and in the maintenance of the bridge and guardrail. Design and construction of a governmental projects involves decisions and standards that are usually distinct from the maintenance of these same structures. Accordingly, this Court will look at the each in turn.

Plaintiff maintains that the National Park Service, a governmental agency, used an inferior design and inferior materials as compared with guardrails found elsewhere on the same road, or did not follow its own specifications when producing and installing the guardrail in question. Therefore, Plaintiffs argue, the Government was not acting within its proper discretion in the design and construction of the guardrail.

Plaintiffs also charge that the Government was negligent in not erecting concrete barriers on the bridge when it found that the guardrails were deficient as it had done elsewhere on the road. After carefully reviewing these claims, this Court finds that the design and construction of the guardrail was a discretionary function of the National Park Service as was the determination not to put barriers in place. Consequently, Plaintiffs' claims are barred by the FTCA.

Of particular consequence here is the decision of the Fourth Circuit in *Bowman v. United States*, 820 F.2d 1393, in which a plaintiff brought suit against the government for failure to erect a guardrail along an embankment on a federally controlled highway. The *Bowman* court held the decision of the National Park Service on where to place a guardrail to be discretionary and hence not actionable under the FTCA. In so holding, the court found that:

National Park Service officials have more than safety in mind in determining the design and use of manmade objects such as guardrails and signs along the parkway. These decisions require balancing many factors: safety, aesthetics, environmental impact and available financial resources. In making each decision, these factors must be weighed carefully in accordance with the policies of the National Park Service.... The evidence indicates that some thirty years ago the Government considered installing a guardrail ... but elected not to do so. Whether that decision grew out of a lack of financial resources, a desire to preserve the natural beauty of the vista, a judgment that the hazard was insufficient to warrant a guardrail, or a combination of all three is not known. What is obvious is that the decision was the result of a policy judgment. One can argue that another policy, which places greater emphasis upon safety is more desireable. However, by the discretionary function exception, Congress intended to prevent courts from second guessing federal policy. It is precisely this type of decision which Congress intended to shield from liability because 'where

there is room for policy judgment and decision, there is discretion.'

*Id.,* 820 F.2d at 1395, *quoting, Dalehite,* 346 U.S. at 36, 73 S.Ct. at 968. *See also Mahler v. United States,* 306 F.2d 713 (3rd Cir.), *cert. denied,* 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231 (1962).

Given this clear holding by the Fourth Circuit that whether a guardrail is used at a particular location is inherently discretionary, this Court cannot allow Plaintiffs to continue their cause of action based upon the materials used to construct a guardrail. The same policy considerations in determining not to erect the guardrail in *Bowman* necessarily were present when the National Park Service decided how the guardrail in the case at bar would be constructed. Government's Exhibit A, Affidavit of Robert G. Stanton, at 6–7. *Cf. Chute v. United States,* 610 F.2d 7 (1st Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980) (Coast Guard determination of buoy size used to mark shipwreck deemed discretionary under FTCA). Likewise, there is no difference between the National Park Service's failure to erect a guardrail in *Bowman* and its decision not to place concrete barriers in front of the guardrail in this case under a failure to warn theory. *See General Public Utilities Corp. v. United States,* 745 F.2d 239 (3rd Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985) (Nuclear Regulatory Commission not liable for failure to warn Three Mile Island nuclear facility owners of equipment defects).

■ Plaintiffs attempts to distinguish *Bowman* by arguing that once the Government affirmatively decided to build the guardrail, it should be held liable for negligent design and construction of the structure. However, the cases cited by Plaintiffs all involve instances where the general public and the litigants involved would be naturally entitled and expected to rely upon safe design and construction. *See Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (case involving liability for a negligently constructed and maintained lighthouse); *Alabama Electric Co–Op., Inc. v. United*

*States,* 769 F.2d 1523 (11th Cir.1985) (claim allowed against Government for negligent construction of dike which caused erosion and threatened private building); *Seaboard Coast Line Railroad Co. v. United States,* 473 F.2d 714 (5th Cir.1973) (action for negligently constructed drainage ditch allowed). This situation is not presented in the case presently before this Court; there was no reliance on the part of the Plaintiffs. It would certainly defy logic for a court to find that the Government cannot be liable for failure to put a guardrail at a particular location but could be liable for using allegedly improper materials once the decision to place the guardrail is made.

This Court finds that Plaintiffs are barred from recovering claims based upon the allegations as they pertain to design and construction. Neither can Plaintiffs recover based upon the alleged failure to later erect concrete barriers. Accordingly, all allegations against the Government concerning negligent construction and installation of the bridge, guardrail and barriers are dismissed.

C. Improper Maintenance of Bridge and Guardrail:

■ Plaintiffs' also assert that the National Park Service negligently failed to maintain the bridge and guardrail in question. Plaintiffs argue that the Government was negligent in not replacing the rail and bridge after finding both to be structurally deficient in 1983 and again in 1986. Plaintiffs further point to the failure of the National Park Service to replace railing after money had been appropriated to do so in November, 1986, six months before the accident.

These claims go to the very heart of the discretionary function of government. Decisions concerning when and if facilities owned by the Government should be replaced or repaired are inherently discretionary when there are no set guidelines, regulations or standards. This is the type of daily policy decision involving choice and judgment that is necessarily made incident to smooth running of government. *See Berkowitz,* 486 U.S. at 536, 108 S.Ct. at

1958. The National Park Service was not guided by rules or regulations in its maintenance of Route 198 and the Baltimore–Washington Parkway. The choices made by the Park Service were the type that the Government must routinely make on a daily basis. Moreover, if and when the National Park Service replaces roads, improves railing, or places barriers are policy decisions controlled by the same considerations as time, manpower, aesthetics, and fiscal and environmental concerns as where noted by the Fourth Circuit in *Bowman, supra.* The fact that the National Park Service had been authorized to replace some of the guardrail over the bridge and that money was set aside for the project does not divest the final decision of when and whether to actually do the project from its discretionary status.[7]

This Court finds that to subject the Government to possible liability in this situation would be paramount to engaging in the type of " 'judicial second-guessing or legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort' " that the Supreme Court expressed in *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. at 1958–59.

Plaintiffs remaining claims against the Government are also dismissed as they relate to the National Park Service's maintenance of the roadway, bridge, and guardrailing. Accordingly, Plaintiffs Baum and Leedy's complaints against the Government are respectively dismissed in their entirety.[8]

## IV. THIRD–PARTY CLAIMS:

Baum has moved this Court to dismiss Counts III and IV of the third-party complaint filed by the Government in the Leedy case. The Government has agreed to dismiss Count III. Accordingly, Count III of the third-party complaint in HAR–90–830 will be granted as unopposed. The remainder of the Government's third-party claims are for indemnity against Baum and Massey, and contribution against Massey. Since all claims against the Government have been dismissed, these claims and all motions to dismiss them are moot. Accordingly, Baum's Motion to Dismiss Count IV of the third-party complaint will be denied as moot and the remainder of the third-party complaint will be dismissed.

It will be so ordered.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, IT IS this 23rd day of May, 1991, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Defendant and Third–Party Plaintiff United States of America's Motion to Dismiss, or in the Alternative, for Summary Judgment BE, and the same IS hereby, GRANTED;

2. That all claims asserted in the above-captioned cases against Defendant and Third–Party Plaintiff United States of America BE, and the same ARE hereby, DISMISSED;

3. That Plaintiff and Third–Party Defendant Price A. Baum ("Baum") Motion to Dismiss Count III of the Third–Party Complaint in HAR–90–830 BE, and the same IS hereby, GRANTED as unopposed;

4. That Plaintiff and Third–Party Defendant Price A. Baum ("Baum") Motion to Dismiss Count IV of Third–Party Complaint in HAR–90–830 BE, and the same IS hereby, DENIED as moot;

5. That all remaining third-party claims asserted by Defendant and Third–Party Plaintiff United States of America BE, and the same ARE hereby, DISMISSED;

6. That the Clerk of the Court CLOSE these cases;

7. That the Clerk of the Court mail copies of this Order and the accompanying

---

7. It should be noted that the money was allocated only six months before the accident and that most of the time period in question was during winter months when little construction is done.

8. This Court does not reach the Government's alternative pleading that judgment be granted on lack of proximate causation.

Memorandum Opinion to all parties of record.